282 So.2d 126 (1973)
William J. SIMON
v.
FORD MOTOR COMPANY et al.
No. 52228.
Supreme Court of Louisiana.
February 19, 1973.
Dissenting Opinions February 20 and March 19, 1973.
On Rehearing June 29, 1973.
Concurring Opinion August 27, 1973.
Dissenting Opinion August 10, 1973.
*127 Johnnie A. Jones, Baton Rouge, for plaintiff-applicant.
Durrett, Hardin, Hunter, Dameron & Fritchie, Wallace A. Hunter, L. Michael
Cooper, Baton Rouge, Horace C. Lane, Dale, Owen, Richardson, Taylor & Mathews, Daniel R. Atkinson, Franklin, Moore, Beychok & Cooper, James E. Moore, Baton Rouge, for respondents.
DIXON, Justice.
This damage suit arose out of an automobile accident caused by the failure of the steering mechanism of defendant's vehicle. Plaintiff William J. Simon sought damages from Sammie Ferrington, the owner and driver of the offending automobile; from Allstate Insurance Company, Ferrington's insurer; from Ford Motor Company, the manufacturer; from Hub City Motors, Inc., the dealer who first received the car from Ford; from Hardware Mutual Casualty Company, Hub City's insurer; from McIlwain Motor Company, Inc., of Columbia, Louisiana, Ferrington's vendor; and from Bituminous Casualty Corporation, McIlwain's insurer.
The trial court rendered judgment against Ferrington and Allstate Insurance Company in favor of plaintiff Simon for $18,116.66, the judgment against Allstate being limited to its policy limits of $10,000.00. The Court of Appeal reversed the judgment against Ferrington and Allstate, and affirmed the judgments in favor of the other defendants. 256 So.2d 725. We granted plaintiff Simon's application for writs. 260 La. 1127, 258 So.2d 378.
The accident occurred in July, 1968 near St. Francisville on U. S. 61, a two lane paved highway running north and south. Ferrington, with his sixteen year old daughter as a passenger, was driving his 1962 Ford Galaxie south toward Baton Rouge. Plaintiff Simon was driving his automobile north toward Woodville, Mississippi. Defendant Ferrington testified that as he neared plaintiff a loud popping noise occurred and the right front side of his car suddenly collapsed without warning. The car immediately veered to the left, out of control. A sideswiping collision resulted in the lane in which plaintiff *128 Simon was traveling. Simon's car then hit a bridge abutment and flipped into the bed of Grants Bayou.
The testimony of Ferrington and other witnesses indicates that there was a sudden failure in the right front ball joint assembly of Ferrington's Ford automobile, which had registered 76,000 miles of service at the time of the accident. Ferrington, who repaired his own automobile following the accident, testified that he found that the ball had "pulled out" of the socket of the lower ball joint on the right front wheel. Experts testified that a separation of the ball joint from the socket of the ball joint assembly could happen suddenly and could create a loud popping noise. The experts further testified that, due to the construction of the steering linkage between the two front wheels, a collapse of the right ball joint would cause the left wheel to turn toward the left, forcing the automobile to veer to the left. The investigating officer testified of "scuff marks" on the pavement, which were apparently left by Ferrington's right front tire. This indicates that the right front wheel had collapsed prior to the accident.
Although this testimony establishes a failure in one of the right front ball joint assemblies as the cause of the accident, there is no indication of the cause of the failure. After replacing the broken ball joint and retaining the broken parts for some time, Ferrington disposed of the old parts as junk prior to trial.
Because the record is void of any proof of the cause of the failure in the ball joint assembly, plaintiff Simon cannot prevail against Ford Motor Company, Hub City Motors, Inc., Hardware Mutual Casualty Company, McIlwain Motor Company, Inc., or Bituminous Casualty Corporation.
To recover from Ferrington and his insurer, Allstate, plaintiff must either prove negligence on the part of Ferrington or rely on some theory of strict liability.[1]
Ferrington's automobile was manufactured by Ford Motor Company in 1962. The ball joint assembly in question was the original ball joint assembly riveted onto the automobile at the factory. The ball joint was lubricated by a special lubricant designed to last through 30,000 miles of driving and was sealed with a plug. When Ferrington purchased the automobile as a used car, the speedometer registered around 30,000 miles. The ball joint was still sealed with a plug. However, the Ford Motor Company expert, Mr. Robert L. Frey, testified at trial that the presence of the plug did not necessarily mean that the ball joint had not been lubricated because the plug could be replaced after lubrication.
After purchasing the used automobile, Ferrington, a heavy equipment operator capable of performing mechanical work, replaced the plug on the ball joint assembly with a fitting and greased the ball joint with his employer's equipment. Ferrington continued to grease the ball joints at approximately 1000 mile intervals until the time of the accident. He testified that he never had any steering problems prior to the accident, nor did he notice any wobbling of the right front wheel prior to the sudden collapse which immediately preceded the unfortunate accident in July, 1968.
It is well established in Louisiana that when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and that the burden is on him to show that the collision was not caused by his negligence. Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 169 So.2d 50 (1964); Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671 (1957).
Evidence proved beyond a doubt that, once the ball joint failed, Ferrington could not have avoided the collision.
*129 There is no evidence and no showing that Ferrington ever failed to do what a prudent automobile operator should have done in maintaining the steering mechanism on his automobile.
Ferrington proved that he lubricated the ball joints of his automobile carefully, frequently and correctly. He proved that the failure occurred without any prior warning whatsoever. Expert testimony tended to establish that defects or wear in ball joints could not be discovered during routine greasing operations. Ball joints, a part of the steering mechanism, are customarily checked by "front end" mechanics, who do so in the process of correcting some misalignment of the front wheels. Even then, the check consists of relieving some pressure from the coil springs on the front end, then checking the front wheels to determine whether there is excessive play. There are several movable parts in the front end where excessive wear might occur. The testimony fails to establish that there is any definite and measurable standard in performing such tests. Expert testimony tended to establish that hardly anyone goes to a mechanic specifically to have the ball joints checked.
We cannot gather from the record that Ferrington failed to take any action which a reasonable and careful automobile owner should have taken to guard against the risk of failure of the ball joint. He has successfully carried the burden of proving that the accident did not occur because of his negligence.
Nor are we willing in such a case to apply a doctrine of strict liability or a doctrine of liability without fault to Ferrington to make him responsible for damages resulting from the mechanical failure of his automobile. See Cartwright v. Firemen's Insurance Company of Newark, N. J., 254 La. 330, 223 So.2d 822 (1969).
The judgment of the Court of Appeal, rejecting the demands of the plaintiff, William J. Simon, against all defendants is affirmed, at plaintiff's costs.
BARHAM, J., dissents with reasons.
TATE, J., dissents and assigns written reasons.
CALOGERO, J., dissents and assigns written reasons.
TATE, Justice (dissenting).
The writer respectfully dissents insofar as the majority dismisses the suit against Ferrington, the driver of the vehicle which suddenly veered into the plaintiff Simon's path and collided with his vehicle, and Ferrington's liability insurer.[1]
In July 1968, the plaintiff Simon's vehicle was struck in his own lane of the highway by Ferrington's opposite-bound vehicle. The cause of the accident was the sudden failure in the right front ball joint assembly of Ferrington's 1962 Ford. Ferrington's car veered left out of its own lane, out of control, and collided with Simon's automobile.
The majority absolves Ferrington of liability, because Ferrington testified that he had greased the ball joint assembly every 1000 miles since purchasing the car and because Ferrington testified he had not noticed any wobbling or untoward sign of the right front wheel prior to the sudden collapse in July 1968. The majority concludes that therefore no negligence can be ascribed to the owner and operator of this six-year old vehicle, with 76,000 miles on it, when due to vehicle defect the right front wheel suddenly collapsed and the vehicle veered out of control and out of its own lane of traffic, causing serious injuries to travelers lawfully in their own lane and completely innocent of any fault.
*130 My reason for dissenting is based on larger reasons than the appellate reversal of the trial court's determination that, even under such a restricted view of liability, the driver of the vehicle had not satisfied the heavy burden of a driver who strikes another in the opposite-bound lane of absolving himself from the slightest degree of fault contributing to the injury. As this court has consistently held, when a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Noland v. Liberty Mut. Ins. Co., 232 La. 569, 94 So.2d 671 (1957); Breaux v. Valin, 138 So.2d 405 (La.App.3d Cir.1962) (claim of latent brake failure).
As pointed out by our trial brother:
"It should be remembered that Ferrington's car had seventy six thousand miles on it. Thus, the automobile can be said to have entered into old age. It is common knowledge that an automobile in the autumn of its life is peculiarly subject to breakdowns of all sorts. If such a car is driven on the highways of this state, because of its susceptibility to breakdowns and mechanical failures, it presents a greater risk to life and safety than does a car in the prime of its life. Consequently, when a car of this vintage and long use is driven, it is the court's opinion that the driver of that car owes a duty to his fellow motorists to take reasonable steps to insure that the essential parts of his automobile are in good working condition. Nothing in an automobile can be more essential to its safe operation than the steering assembly. The ball joints are integral parts of the steering assembly. Furthermore, the ball joints are known to wear out in time. If a driver chooses to operate an old car, he must be held to know that many of the essential parts of his machine (and, particularly, in this case, the ball joints) may have exhausted this normal life expectancy.
"If he fails to inspect or have inspected the parts of his car which may cause injury, and fails to renew these parts before they break down, he is guilty of negligence merely by virtue of his failure to act. Or, put otherwise, if a man drives a car which has in it parts which he knew or should have known are perilously close to the end of their normal life span, and such a part fails and causes injury, the driver is negligent in operating such a car when reasonable inspection could have informed him of the need for replacement of the worn parts. * * *"
Fundamentally, however, I believe that the true basis of liability is that provided by Civil Code Article 2317: that one is responsible for the damage occasioned by "the things which we have in our custody."
The true basis of the "fault" envisioned by this article is not negligent maintenance. It is instead that, in this crowded Twentieth Century society, one who has the benefit of using a thing is likewise liable for the damage done by that thing, through its defect, to another who is himself without fault. The risk of the use of the thing is on the user, not on the innocent bystander. See Stone, Tort Doctrine in Louisiana: The Concept of Fault, 27 Tul.L.Rev. 1, 18-20 (1952); Note, Things in One's Custody, 43 Tul.L.Rev. 908 (1969); cf., Tort Law in Louisianathe Supplementary Tort Articles, 44 Tul.L.Rev. 119 (1969).
As the texts cited show, this principle of strict liability has for some decades been applied to the similar Code "fault" of owners of buildings to those injured by vices in the building. Civil Code Articles 670, 2322. See also: Comment, Lessor's Liability for Personal Injuries, 7 La.L.Rev. 406 (1947); Comment, Liability of Lessor to Third Persons Lawfully on the Leased Premises, 16 Tul.L.Rev. 448 (1942).
Such strict liability upon the owner of a thing which causes injury to another through its defect is also imposed under the French Civil Code Article, identical in *131 wording to our Article 2322, from which the latter article is derived. This principle, I submit, represents the proper interpretation of our article. See Note, 43 Tul.L. Rev. 907 (1969), above-cited.
Modern French judicial interpretations, commencing in the 1920's and 1930's with the motorizing of society, have under this article accorded strict liability to the owner-operator (or other custodian) for damages caused by vehicle defects. Tunc, The Twentieth Century Development and Function of the Law of Torts in France, 14 Int'l. and Comp.L.Q. 1089, esp. 1094-97, 1101 (1965); Deak, Automobile Accidents: A Comparative Study of the Law of Liability in Europe, 79 U. of Pa.L.Rev. 271, 279-95 (1930); von Mehren, The Civil Law System 388-91 (Prentice-Hall; 1957); Mazeaud, Traite The orique et practique de la Responsabilite Civile, Tome II, Sections 1228 (p. 235), 1260 (p. 259), 1599-1608 (pp. 598 et seq) (5th ed., 1958). Professor Tunc summarizes the interpretations as follows: "* * * the custodian of the thing can be discharged only to the extent to which the damage was caused by an external circumstance: if, on the other hand, the damage was the result of a defect in the thing, he will not be discharged, even though he could not have known of the defect." Tunc, cited above, at p. 1096. See also Planiol, Civil Law Treatise, Volume 2, Sections 929, 930, 931(1), (2), (5), and (7), LSLI 1959 translation).
In short, I believe the contrary judicial interpretations of the nature of the civil liability under our Civil Code Article 2317 (such as Cartwright v. Firemen's Insurance Company, 254 La. 330, 223 So.2d 822, 1969) should be overruled. The article should be interpreted in accord with its legislative intent so as to impose strict liability upon the owner of things causing damage through defect to another himself without fault.
Further, I believe that even if the owner is liable only because of "negligence" (as contrasted with the broader liability for "fault" imposed by the Civil Code, cf., Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133, 1971), then this owner-operator, the defendant Ferrington, has not absolved himself from negligence, as required by our jurisprudential rule, when his vehicle veers over into another lane and strikes and injures one lawfully and blamelessly there.
For these reasons, I respectfully dissent.
BARHAM, Justice (dissenting).
I join in the dissent of Mr. Justice Tate.
Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), effectively overruled Cartwright v. Firemen's Insurance Company of Newark, N. J., 254 La. 330, 223 So.2d 822 (1969), insofar as Cartwright held that Civil Code Article 2317 required negligence under the court's interpretation at that time of "fault" in Civil Code Article 2315. Langlois held that "fault" encompassed more than negligence and more specifically found that fault without any negligence fell within the ambit of that article. Civil Code Article 2317 also now imposes liability in the appropriate case under the concept of fault even in the absence of negligence. See concurrence in writ denial, Theriot v. Transit Casualty Company, 263 La. 106, 267 So.2d 211 (1972).
CALOGERO, Justice (dissenting).
The writer dissents insofar as the majority dismisses the suit against Ferrington, the driver of the vehicle which veered into the path of the plaintiff's vehicle, and Ferrington's liability insurer.
This Court has consistently held that when a driver on the wrong side of the road collides with another car which is proceeding in the correct lane of traffic, this driver bears a heavy burden of exculpating himself from fault. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Noland v. Liberty Mutual Insurance Co., 232 La. 569, 94 So.2d 671 (1957). The *132 writer submits that under the facts of this case, Ferrington has not borne the burden of proof required to exculpate himself from fault.
For this reason, I respectfully dissent.

ON REHEARING
TATE, Justice.
As is shown more fully by our opinion on first hearing, the present suit involves a suit by the plaintiff Simon for personal injuries sustained under the following circumstances:
On July 13, 1968, the plaintiff Simon was driving north on his own side of a two-lane United States highway. Approaching from the opposite direction was the defendant Ferrington, who was driving his 1962 Ford southward.
As the vehicles neared one another, the lower right front ball joint of Ferrington's 1962 Ford pulled out of the socket on the front wheel, causing the right front side of the Ferrington vehicle to collapse. Ferrington's automobile veered to the left, out of control, and struck the plaintiff Simon's automobile, which was in its own lane, causing it to crash into a bridge abutment.
Thus, Simon, driving his own vehicle on its proper side of the highway and utterly without fault, sustained serious personal injuries when the ball joint on Ferrington's 6-year old vehicle collapsed and caused it to cross into Simon's lane.
On rehearing, the plaintiff Simon earnestly contends: (1) that we were in error in rejecting his claim against the Ford Motor Company, manufacturer of the vehicle; (2) that Ferrington and his liability insurer should be held liable for Ferrington's fault in operating a defective vehicle, which went out of control and crossed the highway into the opposite-bound lane, causing injury to a blameless person properly proceeding therein in the exercise of due care on his part.
1. Ford Motor Company
With regard to the claim against Ford Motor Company, the plaintiff Simon argues that the ball joint assembly must have been defective.
This argument is based upon the testimony that the ball joint ordinarily lasts the life of the vehicle, with proper lubrication. The plaintiff points out that the automobile had only 76,000 miles upon it at the time of the accident, with a normal vehicle life expectancy of over 100,000 miles; hence, he argues, the premature failure of the ball joint indicates an initial defect.
The testimony shows that the ball joint as initially assembled with the vehicle contains a special lubricant and is sealed so as to last at least 30,000 miles. After that, the owner's manual indicates it should be relubricated with this special type of lubricant[1] every 30,000 miles.
The testimony of the two experts is to the effect that without such periodic lubrication, or more frequent lubrication if used on rough roads or during persistently inclement weather, the ball joint can become worn and cause collapse of the wheel. The *133 owner's manual and normal care call for periodic lubrication. The experts indicate that worn ball joints are usually caught upon inspection for front-end alignments, called for by reason of unusual wire tear or difficulty in steering.
In short, while if properly lubricated at proper intervals with the proper type of lubricant, the ball joint may well last the life of the car in the absence of rough use, nevertheless a number of factors beyond the manufacturer's control can cause a shortened life of the ball joint. In the present instance, Ford had manufactured the automobile in 1962 and the ball joint assembly did not collapse until 1968, during which interval lack of lubrication or other owner misuse were more likely causes of the failure of the ball joint than any initial defect. We adhere to our initial determination that fault on the part of Ford is not proved by a preponderance of the evidence before us and that therefore the trial and intermediate courts correctly dismissed the suit against this manufacturer.
2. Ferrington and his liability insurer
With regard to the claim against Ferrington, the driver of the vehicle which suddenly veered from its proper lane across the highway into Simon's lane, the following principle is applicable:
When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957); Noland v. Liberty Mut. Ins. Co., 232 La. 569, 94 So.2d 671 (1957). See also: Jones v. Continental Cas. Co. of Chicago, 246 La. 921, 169 So. 2d 50 (1964); Breaux v. Valin, 138 So.2d 405 (La.App. 3d Cir. 1962) (claim of latent brake failure).
In our original majority opinion, we overlooked that the burden of the motorist who leaves his proper lane of the highway to injure a blameless person proceeding properly in the opposite lane is not simply to exculpate himself from ordinary negligence, but from any fault whatsoever.
The rationale underlying this legal principle imposing this heavy duty upon the trespassing motorist is perhaps most clearly explained in Rizley v. Cutrer, cited above. There, Mr. (later Chief) Justice McCaleb stated, 95 So.2d 142:
The trespassing motorist "having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof." (Italics ours.)
In the present instance, we find that Ferrington has not borne his heavy burden of exculpating himself from the slightest fault contributing to the accident.
According to his trial testimony, Ferrington had purchased the 1962 Ford in December, 1965. At that time, it had 30,000 *134 miles on it. The original sealed plug was still on the ball joint. He removed it, inserted a grease fitting in it, and then, he said, lubricated the ball joint at that time and at intervals thereafter. The ball joint pulled out of the socket two and one-half years later when due to Ferrington's additional use the vehicle had a total of 76,000 miles on the vehicle.
He testified that he had never had any one service this vehicle but had done the lubricating himself with a hand gun at his employer's place of business. Initially, he testified he greased the vehicle "as I seen fit, you know, when I figured it needed it", Tr. 177, "I never had no certain time to grease it, I justI mean when I figured it needed it", Tr. 204, "When I greased it, I mean, I used my own judgment about when to grease it, you know", Tr. 206.
Pressed ("Well, did you grease your car every thousand miles or every so often or what?"), he replied, "About every thousand or something like that", Tr. 204, Tr. 206. It was there that he responded to the question, "Well, anytime you greased your car did you then apply grease or a lubricant to the ball joints?" with, "I put a shot in there, right".
It is apparent from his testimony that he just used ordinary lubricant, not the special lubricant required for ball joints (see footnote 1 above). This was the lubricant his own expert, Doyle, testified would shorten the ball joint life "because of inferior lubrication", Tr. 47. The expert had further testified that such lubricant in a ball joint would be needed "every thousand miles or two thousand miles or something like that." Doyle deposition, p. 46.
This expert, Doyle, testified that ordinarily the failure of a lower ball joint is caused by a wearing of the outer metal housing until finally the ball joint pulls through. The cause of this is "friction inside the ball joint next to the housing", the cause of which is "a lack of lubrication or a lack of perfect lubrication or a lack of adequate lubrication." Doyle deposition, p. 30.
We conclude that Ferrington has not absolved himself from the heavy burden of exculpating himself from any fault contributing to the accident owed by one who leaves his own lane of the highway to strike another without fault, because:
1. The preponderance of the evidence shows that the most probable cause of the ball joint failure was defective lubrication. Ferrington was admittedly responsible for lubricating the vehicle during the two and one-half years prior to the accident, during which he had operated the vehicle for over 40,000 miles.
2. The uncontradicted testimony is that a special kind of long-lasting lubricant was needed (see footnote 1 above), whereas Ferrington admitted he just gave the ball joint a shot of ordinary lubricant when he greased the car (he very generally estimated) every thousand miles. While, properly and regularly inserted every thousand miles, such ordinary lubricant might serve the same purpose, it was not preferred treatment as it would shorten the life of the ball joint.
3. The preferred treatment called for lubricating with this special lubricant only every 30,000 miles or so. A danger to be avoided in lubricating was to permit foreign matter to be inserted into this sensitive and always used joint, since such could cause excessive and abnormal wear. Tr. 245. If indeed Ferrington did use ordinary lubricant as often, or even half or third as often, as he estimated, he appreciably increased the risk of causing such excessive wear by using his own informal method of servicing the ball joint rather than that recommended.
4. Considering the heavy burden on Ferrington to exculpate himself from any fault, we are unable to say that the failure of himself and his insurer to preserve the defective ball joint, immediately claimed to be the cause of the accident and as a factor *135 exculpating himself from negligence, is without consequence. See concurring opinion (Hamlin, J.) in Joyner v. Aetna Casualty & Surety Co., 259 La. 660, 251 So.2d 166, 171 (1971). Ferrington removed the defective joint when he repaired his vehicle about three weeks after the accident, and he threw it away. By doing so, he deprived the person injured because of the vehicle defect of any opportunity to show the cause of the defect, as well as of an opportunity for himself to corroborate (if true) by objective evidence his own selfserving testimony of periodic lubrication.
In reaching this conclusion, we have also taken into consideration the heavy burden of one who attempts to exonerate himself from fault when an allegedly latent defect of his own vehicle causes injury to another. From Hassell v. Colletti, 12 So.2d 31 (La.App.Orl.1943) (McCaleb, J.) through Ryan v. Rawls, 260 So.2d 137 (La.App. 2d Cir. 1972), it has been recognized that one who relies on a latent defect is held a heavier burden of proving this than is supplied by his own uncorroborated testimony that he had no advance notice of the defect and that he had used ordinary care to prevent the failure of the part. The reason for this heavy burden is that the innocent person injured through the defect cannot reasonably be held to discover pre-accident evidence within the sole and exclusive knowledge of the person who has owned and maintained the defective instrument, unless its owner comes forth with some objective evidence, other than his own testimony, against which his defense of innocence of fault may be measured.

Conclusion
Having found Ferrington and his insurer responsible for the injuries sustained by Simon under the principles noted, we need not discuss the liability, if any, of Ferrington for "fault" under Civil Code Article 2317, as suggested by the dissenting opinions filed to the original opinion.
The trial court awarded the plaintiff general damages of $12,500, principally for his severe hand injuries, producing substantial permanent disability of this part of the body, together with proven special damages of $5,616.66. We find no abuse of the "much discretion" of the trial court in the award of the general damages. The special damages are adequately proven by the evidence. Thus, the total award of $18,116.66 is supported by the record.

Decree
Therefore, for the reasons assigned, we affirm the trial court judgment in favor of the plaintiff Simon and against the defendant Ferrington and his liability insurer, Allstate Insurance Company, in the total sum of $18,116.66, together with legal interest upon said sum from date of judicial demand until paid.[2] Allstate's liability is limited in principal amount to its policy limits of $10,000, with legal interest upon said sum from date of judicial demand until paid, and with liability for interest upon the balance of the award from date of judgment until paid as may be provided by its public liability policy.[3] The defendants Ferrington and Allstate are cast with all costs of these proceedings.
*136 The court of appeal judgment is reversed to this extent; otherwise it is affirmed, insofar as it dismissed the demands against all other defendants, as did the trial court judgment.
Court of Appeal judgment affirmed in part; in part set aside; and trial court judgment affirmed.
BARHAM, J. concurs for reasons to be assigned later; SANDERS, C. J., dissents for the reasons assigned on original hearing.
SUMMERS, J., dissents; DIXON, J., dissents with reasons.

ON REHEARING
BARHAM, Justice (concurring).
We have held in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971) that Civil Code Article 2315 encompasses the concept of recovery of damages for fault which is not restricted to proof of negligence. That case overruled Cartwright v. Firemen's Insurance Company of Newark, N. J., 254 La. 330, 223 So.2d 822 (1969) insofar as it held that Civil Code Article 2317 required negligence under the court's interpretation at that time of "fault" in Civil Code Article 2315.
While not intending to impose absolute liability on the operators of motor vehicles, I am of the opinion that the operators of motor vehicles operate them with full knowledge that defects may exist which are not detectable, and which if activated, may give rise to an accident which involves a totally innocent party who exerts no control over the automobile. Under these circumstances and through Articles 2315 and 2317, policy would seem to dictate for legal as well as socio-economic reasons, that an innocent third party should be able to recover from the operator (as well as others in most cases) the damages suffered when a defect in the automobile causes injury to the innocent party. Under this holding I do not reach the question of negligence of the driver of the vehicle herehis negligence is questionable. I would hold the driver and Ford Motor Company liable, in solido, to the innocent party for the damage caused. The question of their proportionate share of these damages is between those parties. This solidary obligation is not before us and is subject to modification by contract between the parties.
I respectfully concur.
DIXON, Justice (dissenting).
I respectfully dissent. Mr. Ferrington will never know what he should have done to avoid liability for this accident. Neither will anyone else.
NOTES
[1] See, C.C. art. 2317 and 43 Tul.L.Rev. 907 (1969).
[1] I concur in the dismissal of the claim against the manufacturer, the initial retailer, and the vendor to Ferrington, for the reasons noted by the majority opinion.
[1] This is a molysulphide lubricant, a "relatively special lubricant in that it has the ability to coat parts and give them a very slippery surface and it is relatively waterresistant." Testimony of Frey, quality control engineer for Ford, Tr. 222. This witness also testified that the use of more lubricant on a more frequent basis would not hurt the vehicle unless you allowed foreign substances to enter or "unless you use some inferior lubricant." Tr. 247. This testimony is corroborated by Doyle, an expert automobile mechanic testifying on behalf of Ferrington and his liability insurer. This expert noted that "the manufacturer doesn't wish this [the ball joint] to be serviced in the field during regular normal lubrications because it is a special lubricant", p. 13 Doyle deposition. See also p. 14, p. 46, p. 47 (use of regular service station lubricant "wouldn't be as efficient" and "would actually shorten it [the ball joint life] because of inferior lubrication"). (Italics ours.)
[2] The trial court judgment omitted the award of interest. However, the plaintiff's general appeal from the trial court judgment and his granted-application for review in this court preserve the issue for appropriate correction on this review.
[3] Although the policy itself was not introduced into evidence, by a pre-trial stipulation it is admitted that Ferrington had in effect a "Public Liability Policy" issued by the defendant Allstate of the stated limits. A standard clause in such policies includes legal interest upon court awards from date of judgment until paid. See Doty v. Central Mutual Ins. Co., 186 So.2d 328, 332 (La.App.3d Cir. 1966), certiorari denied, 249 La. 486, 187 So.2d 451 (1966) ("no error of law".) See e. g., Inabinet v. State Farm Mut. Auto. Ins. Co., 262 So.2d 920 (La.App. 1st Cir. 1972).