EDWARDS, Judge.
This action ex delicto raises issues involving the correctness of a directed verdict for plaintiff and the reasonableness of the amount of damages awarded to plaintiff.
Plaintiffs, Sallie Guillory and Merlin Pontiff, were riding a motorcycle in an eastbound direction on Louisiana Highway 20. Guillory was the owner of the motorcycle, but Pontiff was driving. Guillory and Pontiff had become separated from a friend, Eric Aucoin, who was riding on another motorcycle and they were attempting to catch up to him. Pontiff came up behind a line of four vehicles. The lead vehicle was an automobile, followed by Aucoin. There were two tractor-trailer trucks behind Au-coin. The first belonged to Avondale Shipyards and was driven by Clifford Collins. The second truck was driven by Charles Stansbury. Pontiff passed the truck driven by Stansbury without incident and began to pass the Avondale truck. When the motorcycle carrying Guillory and Pontiff was even with the cab of the Avondale truck, Collins began to change lanes, striking the motorcycle. The impact of the collision caused the motorcycle to leave the road, resulting in serious injuries to both Guillory and Pontiff.
Pontiff filed suit for damages against Avondale Steel Sales, a division of Avon-dale Shipyards, Inc.; Clifford Collins; and The Travelers Insurance Company, Avon-dale’s liability insurer. Guillory also filed suit, naming as defendants Avondale Shipyard, Inc. and The Travelers Insurance Company. The defendants answered both petitions, denying any negligence on the part of Collins and asserting contributory negligence on the part of Pontiff as well as contributory negligence and assumption of the risk by Guillory. Additionally, the defendants filed a third party demand against Pontiff in the Guillory suit, alleging that *801 his negligence was the cause of the accident and seeking indemnity or, alternatively, contribution. Upon defendants’ motion, the two cases were consolidated for trial on the merits. However, Pontiff’s suit against the defendants was compromised and settled and was, therefore, dismissed upon joint motion of the parties.
Guillory’s suit proceeded to a trial before a jury. After plaintiff and defendants rested their cases, the trial court, on motion of the plaintiff, directed a verdict in favor of Guillory and against Avondale on the issues of negligence, contributory negligence and assumption of the risk. The issue of quantum was submitted to the jury on the basis of a special verdict form. The trial court entered judgment on the jury verdict in favor of plaintiff as follows:
“a. Past physical pain and suffering_$ 50,000.00
b. Future physical pain and suffering_ 50,000.00
c. Past mental anguish_ 25,000.00
d. Future mental anguish_ 25,000.00
e. Disability_ 50,000.00
f. Disfigurement_ 50,000.00
g. Past medical expenses_ 11,359.89
h. Future medical expenses_ 75,000.00
i. Past loss of earnings_ 2,500.00
j. Future loss of wages_ 60.000.00
Total -$398,859.89"
Defendants’ motion for a new trial or, in the alternative, for a remittitur, was denied.
Defendants have appealed, raising several specifications of error. They assert that the trial court erred in directing a verdict in favor of plaintiff on the issue of liability. Additionally, they assert that the form of the special verdict contained duplicitous items of damages and that the amount of the award was excessive. Because our conclusion that the trial court erred in granting the directed verdict requires reversal, only the specification dealing with that issue will be considered.
Directed verdicts are authorized in civil jury trials by LSA-C.C.P. art. 1810, which provides, in pertinent part, as follows:
“A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”
The standard for granting a directed verdict is that which is applied in the federal courts. Tirante v. Gulf States Utilities Company, 412 So.2d 128 (La.App. 1st Cir. 1982); Gunter v. Planche, 399 So.2d 727 (La.App. 1st Cir. 1981); Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir. 1981); Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979). That standard was set forth in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
“On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.”
In granting the directed verdict, the trial court relied on our Supreme Court’s decision in Simon v. Ford Motor Company, 282 So.2d 126 (La.1973). Simon established a rule of strict accountability on the part of a driver who is involved in an accident outside of his own traffic lane:
*802 “When a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident.”
The trial court held that this strict accountability standard was applicable in the instant case because Collins’ truck was not in its lane of travel when the collision occurred. He concluded the defendants had not met their burden of showing that Collins was free from any fault, however slight, which contributed to the accident.
Defendants assert that the trial court erred in applying the Simon rule to the facts of the instant case. We agree. Application of the Simon standard requires more than the mere occurrence of an accident outside of the defendant’s lane of travel. The decision in Simon specifically refers to “the burden of the motorist who leaves his proper lane of the highway to injure a blameless person proceeding properly in the opposite lane.... ” In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), the Supreme Court, presented with an accident where the defendant had struck the rear of the plaintiff’s vehicle, made the following observation:
“The normal burden of proof in a personal injury case is upon the plaintiff. However, in exceptional cases when a plaintiff-motorist is without fault (such as when he is in his own lane and is struck head-on by an oncoming motorist, as in Simon v. Ford Motor Co., 282 So.2d 126 (La.1973)), ‘the driver is required to exculpate himself of any fault, however slight, contributing to the accident.’ Simon v. Ford Motor Co. [La.1973], 282 So.2d 126, 133.”
It is clear that the Simon standard should be applied only in those “exceptional cases” which suggest, by their very occurrence, a negligent defendant and a blameless other driver. An accident between two vehicles proceeding in the same direction, while one is passing the other, is not such a case. A number of cases have applied the standard of Simon v. Ford Motor Co., but our search has turned up none which does so in the context of an accident which occurs in a passing situation between two automobiles traveling in the same direction. In fact, we have been unable to find any decisions which applied the Simon standard to accidents involving anything other than head-on collisions.[1] We conclude that the accident scenario in the instant case, one vehicle striking another which is passing it on a two-lane highway, is not the type of “exceptional case” which warrants imposition of the Simon standard.
Having determined that the trial court improperly applied the Simon standard in this case, we now must decide whether the evidence supports the granting of a directed verdict on the issue of defendants’ liability. Five eyewitnesses testified with regard to the facts of the accident. They were Sallie Guillory, the plaintiff; Merlin Pontiff, driver of the motorcycle on which Guillory was riding; Eric Aucoin, a friend of Guillory and Pontiff who was riding the preceding motorcycle; Clifford Collins, driver of the Avondale truck; and Charles Stansbury, who was driving the truck which was the first to be passed by the motorcycle bearing Guillory and Pontiff.
Merlin Pontiff testified that he was attempting to catch up to Aucoin when the accident occurred. Pontiff testified that he passed the truck driven by Stansbury and pulled in between it and the Avondale truck. As soon as an oncoming vehicle passed, he then attempted to pass the Avon-dale truck. Pontiff estimated that the motorcycle was six feet to the left of the center line as he passed the truck and that the truck was two feet to the right of the center line. Although he estimated that the two vehicles were eight feet apart when *803 Collins pulled his truck over, Pontiff testified that he had no time to react in order to avoid the collision.
Sallie Guillory’s testimony was substantially in accord with that of Pontiff. One significant variation, however, was her estimate that the motorcycle was two and one-half to three feet left of the center line when Collins pulled his truck over.
Eric Aucoin was in front of the accident when it occurred. However, he testified that he did look back as Pontiff was passing the Avondale truck and estimated that the motorcycle was about three feet from the center line.
Clifford Collins testified that he was driving west on LA 20 behind the motorcycle carrying Aucoin. He testified that Aucoin pulled his motorcycle to the right of the road, slowed down and motioned for him to pass. Collins stated that after waiting for oncoming traffic to pass, he looked in his lefthand outside rearview mirror and turned his head to the left, but saw nothing alongside his truck. Collins also testified that he did not expect a vehicle to be alongside because a van had just passed in the opposite direction. According to Collins, he then put on his left turn signal and pulled over to the left in order to pass Aucoin. He estimated that his truck was one and one-half to two feet over the center line when it struck the motorcycle carrying Guillory and Pontiff. Collins claimed that he never saw the motorcycle until the impact occurred. Defendants introduced a number of photographs which support their claim that there was a “blind spot” in which the motorcycle could not be seen. Collins conceded that he could have put his head out of the window and looked back in order to overcome the blind spot, but stated that this would have been a dangerous thing to do because there was traffic on the road in front of him which was slowing down.
Charles Stansbury, the only completely independent witness to the accident, testified that when Pontiff passed him, the motorcycle was on the center line of the highway and that it was still on the center line when Pontiff attempted to pass the Avon-dale truck. However, Stansbury was the only witness to testify that the impact occurred toward the back of the truck, all other witnesses agreed that the cab of the truck struck the motorcycle.
Our examination of the record reveals that the evidence, viewed in a light most favorable to defendants, might allow reasonable men to conclude that Collins was not negligent. It appears that the motorcycle bearing plaintiff was in Collins’ “blind spot”. Because another vehicle had just passed going in the opposite direction, Collins did not think that there could be anything alongside his truck. He testified that he checked his rearview mirror and looked out of his window before pulling over. He further testified that it would have been dangerous for him to put his head out of the window and look back because there were other vehicles in front of him. This testimony certainly could support a conclusion that Clifford Collins acted as a reasonable man under the circumstances.
Furthermore, still viewing the evidence in a light most favorable to the defendants, reasonable men could reach the conclusion that the sole cause of the accident was the negligence of Merlin Pontiff. The only independent witness to the accident, Stansbury, testified that Pontiff attempted to pass on the center line of the roadway. The plaintiff contends that Stansbury’s testimony should be given little weight because he was wrong with respect to the area of the truck where the impact occurred. However, questions of witness credibility should play no part in the evaluation of a motion for directed verdict. Campbell v. Mouton, supra. In considering such a motion, the trial judge must consider all facts and reasonable inferences in the light most favorable to the non-mover.
In light of the evidence before it, the trial court erred in granting the motion for directed verdict. When that evidence is examined in a light most favorable to the defendants, it is clear that reasonable men could have reached a contrary verdict. Therefore, the judgment of the trial court *804 must be reversed and the case remanded for further proceedings consistent with this opinion. All costs of these proceedings are assessed against plaintiff-appellee.
REVERSED AND REMANDED.

. See, e.g., Oliver v. Jones, 370 So.2d 638 (La. App. 4th Cir. 1979), aff’d per curiam, 376 So.2d 1256 (La.1979); Darbonne v. Allstate Insurance Company, 357 So.2d 1269 (La.App. 3rd Cir. 1978), cert. denied, 359 So.2d 622 (La.1978); Baham v. Patterson, 353 So.2d 366 (La.App. 1st Cir. 1977); Lapeyrouse v. LeCompte, 343 So.2d 1117 (La.App. 1st Cir. 1977), cert. denied, 345 So.2d 1193 (La.1977).