WICKER, Judge.
The trial judge rendered judgment solely on the liability issue in this case involving a two-vehicle collision. The defendant appeals a finding that it was fifty percent negligent. The simple factual issue is the fixing of liability. The damage issue has been tried and judgment rendered. It is not an issue in this appeal. We affirm.
Plaintiff, Theresa L. Legnon (Mrs. Leg-non), was heading north in her automobile on L. & A. Road (a private road) on a rainy evening after work. The co-defendant, John McDonald (Mr. McDonald), driving a truck owned by his employer and co-defendant, Browning-Ferris Industries, Inc. (BFI), was heading south. The two drivers collided at an S-curve in the road. The parties and their witnesses (both observers of the accident were employees of BFI) gave differing testimony concerning the details of the accident. No experts or truly independent witnesses testified for either party.
BFI argues that Mrs. Legnon was in the wrong traffic lane at the time of the accident and should be assigned 100% of the negligence and liability for this accident.
We must look at the evidence to determine if it supports a reasonable conclusion by the trial judge that each driver was equally at fault in causing the accident.
Mrs. Legnon testified she was going approximately 15 miles per hour and was in the process of braking for the curve when she saw the BFI garbage truck driven by Mr. McDonald. Her vision was obscured by tall grass and weeds, and she couldn’t see around the curve. She didn’t think the truck had its lights on, and she didn’t see the truck until it was too late to avoid a collision. She stated she was in her lane and couldn’t have been any farther to the right without going into the ditch at the right side of the road. She was familiar with the roadway, passing this point twice each day on her way to and from work. Mrs. Legnon didn’t know whether or not *1160 she skidded, nor could she recall what lane the accident occurred in, although she knew she was in her lane. In her opinion, there was enough room on L. & A. Road for two cars to pass each other. However, when she had to pass BFI garbage trucks, she would stop because she thought they were coming fast and might hit her.
Bertrand Legnon testified that his wife’s car had relatively new tires and a recent brake job. When he arrived at the scene, the front of the car was close to an imaginary center line of the road and he had to walk through the weeds to get into the rear, passenger side door. (This was the only access to get Mrs. Legnon out of the station wagon.) In his opinion, it was possible for the car to bounce off the truck but not to slide too far at the speed it was supposed to be going.
James Bishop, a nine-year BFI employee, testified for the defense. He had been waiting to speak to Mr. McDonald since quitting time, approximately 3:30 p.m.; and he met him on the side of the road about 6:00 p.m. and followed him back to BFI’s yard. He was traveling two to three car-lengths behind Mr. McDonald. He remembers that Mr. McDonald had his lights on and that he was as far to the right of the road as he could get since they had just passed a car going in the opposite direction. (Mr. Bishop testified that the BFI trucks had to go off the road to avoid oncoming large trucks.) In the daytime, he could generally see around the curve where the accident happened. The road where the accident happened was narrower than the rest of the roadway because of the ditch. He saw Mrs. Legnon’s station wagon slide into the front of the cab, by the steps, and bounce back. He testified that these steps, which gave access to the cab, were in front of the wheel.
James Sweeney, a BFI employee of seven years’ duration, was a passenger in Mr. Bishop’s car. He testified that he and Mr. Bishop did not meet Mr. McDonald prior to the accident. They were waiting for Mr. McDonald; and, when they saw him coming, they turned around and followed him, at a distance of approximately four to five feet, back toward the BFI yard. The truck was traveling approximately fifteen miles per hour and had its lights on. The accident happened sometime after four o’clock in the afternoon. Mr. Sweeney stated his vision of the area was not obscured. He saw Mrs. Legnon come around the curve, slam on her brakes, slide into the truck, and roll backward. The truck was halfway off the road, on the gravel, at the time of the collision. The truck was struck on the left, by the steps.
Mr. McDonald, an unserved defendant, also testified. He was a twelve-year BFI employee. It was raining, hazy and after five in the evening at the time of the accident; and he was driving with his lights on at the speed of approximately 10 miles per hour in second or third gear. He had already passed one car going in the opposite direction when he saw Mrs. Legnon. He saw her lights and knew she couldn’t stop or make the curve, so he swerved off the road and onto the gravel on his right. The collision occurred on his side of what would have been the center line. The truck was hit on the steps, which he stated were behind the wheel.
The trial judge was confronted with conflicting testimony, which he had to weigh and evaluate according to the credibility of the various witnesses. Unless we find that he abused the great discretion granted him, we must affirm his decision.
The standard of appellate review as explained in Canter v. Koehring, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) is that even though the Appellate Court may feel that its own evaluations and inferences are as reasonable, it should not disturb reasonable findings of the trial court where there is conflict in the testimony. Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the Appellate Court should not disturb this factual finding in the absence of manifest error, i.e., unless it is clearly wrong.
Greco v. Jordon, 419 So.2d 42, 44 (La.App. 5th Cir.1982).
It is certainly true that Louisiana jurisprudence has held that when a collision *1161 occurs between two vehicles, one of which is in the wrong lane, there is a presumption that the driver in the wrong lane was negligent. Cole v. Mississippi River Bridge Authority, 462 So.2d 1314 (La.App. 5th Cir.1985). See also Simon v. Ford Motor Company, 282 So.2d 126 (La.1973). However, this is a rebuttable presumption. A finding of negligence in one party because of having been in the improper lane does not foreclose a finding of negligence in the other because of some other, concurrent fault which is also a cause in fact of the accident.
The judgment does not specify reasons for assessing joint negligence to each party, but we can make certain assumptions from an evaluation of the testimony. The evidence and testimony support a conclusion that Mrs. Legnon was over the center line, a cause in fact of the accident. It also supports a conclusion that Mr. McDonald was traveling without headlights. This, on a rainy, hazy evening at dusk, was also a cause in fact of the collision. It must have made the truck harder to see, which deprived Mrs. Legnon of reaction time to avoid the accident completely.
We find no manifest error in the judgment of the trial court and affirm its decision. BFI is to pay the costs of this appeal.
AFFIRMED.