HALL, Chief Judge.
Arthur Carter, individually and as tutor of his minor child, Scott Carter, appeals a judgment rejecting his demands for personal injuries sustained by them and for the wrongful death of Blake Carter, son of Arthur and brother of Scott. The three were occupants of a 1978 Chevrolet Station Wagon driven by Arthur Carter when it collided head-on with a 1971 Ford Sedan driven by Edward Carrier. Arthur Carter sought recovery from Carrier, his employer, the Division of Administration for the State of Louisiana, and their insurers. The trial court found no negligence on the part of Carrier. We find the trial court’s decision is supported by the substantial weight of the evidence and was not clearly wrong, and we affirm.
I.
On April 2, 1979, Arthur Carter and his two sons were travelling south on U.S. Hwy. 71 in Bossier Parish and Edward Carrier was travelling north. The Carter vehicle and the Carrier vehicle hit head-on in a curve of U.S. Hwy. 71 approximately 3.4 miles south of Elm Grove at about 10:00 a.m. In this area the highway is a two-lane blacktop roadway with lanes divided by double yellow lines indicating that no passing is allowed.
*1003 As a result of the accident Carter, 27 years old at the time, and Scott Carter, six years old at the time, sustained severe injuries, and Blake Carter who was 20 months old died from the injuries he received. Blake was in the front seat in his child seat and Scott was in the back. The driver of the other vehicle, Edward Carrier, sustained serious injuries also.
Carrier testified that as he approached the curve he observed the Carter vehicle suddenly drift into the northbound lane. Carrier stated he noticed Carter had his left hand on the steering wheel and his head was turned down to the right. As Carter looked up, Carter saw the impending collision and threw both hands up in front of his face. Carrier stated he attempted to turn his vehicle to the right, away from Carter, but the physical evidence at the scene indicates otherwise. Carrier did not recall applying his brakes but there were skid marks left by the Carrier vehicle. Arthur Carter remembers nothing about the accident and no one else witnessed the accident itself.
Trooper William E. Bobbitt of the Louisiana State Police testified at trial as to the physical evidence at the scene as did two accident reconstruction experts. After the impact the Carrier Ford came to rest broadside in the highway facing east with the majority of the vehicle in the southbound lane and only the front wheels and engine compartment in the northbound lane. The Carrier vehicle was pushed back approximately 34 feet from the point of impact. The Carter station wagon was on the southbound lane shoulder facing towards the north. The Carter vehicle travelled approximately 15 feet beyond the point of impact. In their final resting place the vehicles were only six feet apart. In addition to the location and the condition of the vehicles after the impact, the other physical evidence included a skid mark made by the Carrier Ford which indicates the vehicle was at least partially in the southbound or wrong lane, at the time of impact, and numerous gouge and scrape marks on the highway.
Alvin Doyle, Jr. testified on behalf of the plaintiff as an expert in accident reconstruction. Ray Herd testified on behalf of the defendants, also as an expert in accident reconstruction. The critical areas on which the experts disagreed are the position of the vehicles prior to the impact, the point of impact, and which vehicle made which gouge marks.
Alvin Doyle found no evidence that the Carter station wagon was in the wrong lane of travel before impact. He determined the point of impact was in the southbound lane and he determined the Carrier Ford made all the gouge or scrape marks. Ray Herd determined the Carter station wagon was in the northbound lane prior to impact and was attempting to cross into the southbound lane when the cars collided in the middle of the highway. Herd was of the opinion that there was several marks left on the surface of the road by the Carrier Ford but that the Carter station wagon also made a number of the marks that led from the point of impact on the yellow lines to the place where the station wagon came to rest after impact.
Both experts determined that the Carrier Ford left a skid mark approximately 70 feet long, beginning in the northbound lane for approximately 36 feet, crossing the double yellow line and extending into the southbound lane for another 34 feet. The experts agreed the skid mark was made by the front left or driver’s side tire of the Carrier vehicle. This placed that vehicle anywhere from 3⅝⅛ to 4 feet across the center line in the southbound lane at the point of impact. Herd opined that Carrier hit his brakes and as his vehicle slowed the inside slope of the curve created by the super-elevation on the northbound side caused the vehicle to slide into the southbound lane. Herd believed the skid marks left by the Carrier vehicle were consistent with Carrier’s testimony that the Carter vehicle was in the wrong lane.
The experts agreed generally that the angle of impact of the vehicles relative to each other was about 15 degrees but they did not agree to the angle of the vehicles at the point of impact relative to the center- *1004 line. The angle of impact and the point of impact are critical in determining fault in this matter. The trial court found the opinion of Herd to be more plausible because his opinion was more consistent with the testimony of Trooper Bobbitt who examined the scene, and because the agreed upon angle of impact indicates the Carter vehicle could not have been travelling straight down the road. The trial court also found it was more probable than not that the gouge marks were made by the Carter vehicle.
On appeal, plaintiff argues that: (1) the defendant should bear the burden of proving he was not at fault because the defendant’s vehicle was in the wrong lane of travel; (2) the trial court did not properly interpret the evidence; (3) the defendant had the last clear chance to avoid the accident; and (4) the trial court erred in not awarding damages to plaintiff.
II.
Plaintiff argues vigorously that the defendant should have the burden of proving he was not at fault because of the rule of law recognized in Simon v. Ford Motor Company, 282 So.2d 126 (La.1973). In Simon the Supreme Court determined that when a vehicle is in the wrong lane and collides with another car which is in its correct lane the burden of proof is on the driver of the vehicle in the wrong lane to absolve himself from any fault, however slight. Thus, the burden of proof shifts to the driver of the vehicle in the wrong lane only if the other vehicle is in its proper lane of travel. Carter maintains the only uncon-troverted evidence in the trial is that the Carrier Ford was at least partially in the wrong lane of travel at the time of impact as evidenced by the skid marks beginning in the northbound lane and ending in the southbound lane.
While Trooper Bobbitt said the. skid mark appeared to be continuous, both experts found the skid mark to be discontinuous and that it proceeded at different angles relative to the centerline. Doyle, the plaintiff’s expert, stated that when he originally examined the photos he was not satisfied the 34 foot mark in the southbound lane was a skid mark but that, “... it had been later revealed that it is a skid mark by everyone in general.’’ It is also noted that the Carrier vehicle came to rest 34 feet back from the point of impact, the same distance as the second skid mark. While both experts assumed the skid mark was made by the Carrier vehicle prior to impact, and based their reconstruction of the accident on this assumption, this is one characteristic of the physical evidence which was not fully explained by this record.
For the burden of proof to shift in this case the plaintiff must first prove not only that the defendant was in the wrong lane of travel but also that the plaintiff himself was in the proper lane of travel. Assuming, as the experts did, that Carrier was in the wrong lane or at least partially in the wrong lane, Carter must prove he was in the proper lane. It was Doyle’s opinion that Carter was in his proper lane of travel because he found no evidence to indicate otherwise. However, Trooper Bobbitt and Ray Herd were of the opinion that the point of impact was in the center of the highway. This conclusion was based upon the fact that gouge marks were present on the northbound lane yellow line and extended to the place where the Carter station wagon came to rest. There was also a tire mark on the northbound side of the yellow line which Herd identified as having been made by the right front tire of the Carrier automobile after impact. The relative speeds of the vehicles, the angle and thrusts by the impact, and the movement of the vehicles after impact to their final resting place all support Herd’s theory that the Carter vehicle was attempting to return from the northbound lane to the southbound lane at point of impact.
The trial court found that considering the point of impact and the gouge marks made by the Carter station wagon, the Carter vehicle was at least partially in the wrong lane of travel. Our review of this record indicates the trial court was not clearly wrong and, therefore, the burden of proof does not shift in this case.
*1005 III.
Plaintiff argues that the trial court did not properly interpret the evidence when it found no negligence on the part of Carrier. Plaintiff argues several factual and procedural discrepancies in support of this position.
Plaintiff maintains the trial court erred in determining the testimony of Ray Herd was corroborated by the testimony of Edward Carrier. Carrier claimed to be in his own lane and that he attempted to swerve right when he viewed Carter in the northbound lane. While the skid mark evidence reveals Carrier actually went left after his brakes were applied, the skid marks also indicate that Carrier was in his proper lane of travel when he applied his brakes. Ray Herd was of the opinion that Carter’s position in the wrong lane of travel caused Carrier to hit his brakes. Carrier’s testimony that he was in his own lane of travel is corroborated by the fact that the skid marks began in his own lane, and Ray Herd’s testimony that the Carter vehicle was in the wrong lane of travel is corroborated by the fact that Carrier applied his brakes forcefully enough to leave a skid mark when his vehicle was travelling in the proper lane.
Plaintiff argues that the theory espoused by Ray Herd that Carter was in the wrong lane of travel and was crossing back into his southbound lane when the accident occurred is mere speculation. However, a review of the physical evidence including the position of the Carrier vehicle (as determined by the skid marks), the gouge and scrape marks at the point of impact, the damage to the vehicles, and the position of the vehicles after the accident indicates that Herd’s testimony is based upon tangible physical evidence.
Plaintiff argues that Herd’s failure to measure the deformation of the vehicle and to examine the underbody of the vehicles renders his opinion faulty. However, the main reason an expert would measure the deformation would be to determine the angle of impact and the angle at maximum engagement and both experts generally agreed to the angle of impact of the vehicles in relation to each other. Additionally, by the time Herd or Doyle examined the vehicles they had been towed from the original site and numerous spare parts had been removed. Lack of specific knowledge of the methods and conditions of towing obviates the need to examine the under-body of a vehicle to determine which part of the vehicle may have caused scrapes and gouges in the roadway.
In cross examination of Ray Herd, plaintiff intended to impeach his testimony through the introduction into evidence of the “Traffic Accident Investigation Manual”. The trial court did not allow the manual to be introduced into evidence when Ray Herd, after having recognized its general veracity, denied the book was an authoritative text on accident reconstruction. Plaintiff preferred the pertinent portions of the text and contends the court erred in not allowing its introduction into evidence. A review of the preferred material reveals the text contains general guidelines on what type of evidence one should look for at an accident site and how to interpret that evidence. The preferred material did not contain any specific mathematical or engineering principles which one must apply to perform a proper accident reconstruction. The trial court was within its discretion when it declined to allow this text into evidence based upon its determination that this text was considered a general guide to accident investigation rather than an authoritative treatise on accident reconstruction. In any event, we have found no information in the preferred material which would have materially discredited Herd’s testimony.
Plaintiff contends the trial court accepted opinion testimony from Trooper Bobbitt which should have only come from an expert witness. Further, since Trooper Bobbitt was not accepted as an expert, this testimony should not have been allowed. The testimony complained of concerns Trooper Bobbitt’s opinion that the direction of spin of the Carrier vehicle after impact was counterclockwise. Ray Herd was of the opinion that the Carrier Ford rotated in a counterclockwise direction after the im *1006 pact and Alvin Doyle was of the same opinion.
While the opinion testimony of a lay witness is generally excluded, where no harm or prejudice is shown by its admission the trial court’s decision to allow that testimony will not be overturned. Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040 (La.App. 1st Cir.1983), writ denied 434 So.2d 1106 (La.1983). Clearly, the testimony of Trooper Bobbitt which was corroborated by both experts caused no harm or prejudice.
A review of all of the evidence reveals that the trial court’s interpretation of the evidence and its conclusion are supported by the weight of the evidence and are not clearly wrong.
IY.
Plaintiff argues that Carrier had the last clear chance to avoid the accident and his failure to do so renders him negligent. In support of this argument plaintiff recounts the testimony of Ray Herd who determined that if Carrier had in fact swerved to the right he would have had room to pass either on the road or on the shoulder.
Herd estimated that Carrier would have had less than two seconds to react to an obstruction in his lane. While Carrier indicates he may have seen the Carter vehicle 100 feet away, the evidence does not clearly show that Carrier had a chance to avoid the áccident. The evidence does show that Carrier did in fact apply his brakes 70 feet before the point of impact when confronted with a sudden emergency. The trial court was not clearly wrong in failing to find that Edward Carrier had the last clear chance to avoid the accident.
V.
Plaintiff finally argues that the trial court failed to award adequate damages. Having found the defendant not liable this issue is moot.
VI.
For the reasons assigned, the judgment of the district court is affirmed at the cost of plaintiffs-appellants.
AFFIRMED.