514 So.2d 491 (1987)
James ANDREWS, Plaintiff-Appellee,
v.
MOSLEY WELL SERVICE, et al., Defendants-Appellants.
No. 85-1029.
Court of Appeal of Louisiana, Third Circuit.
August 19, 1987.
Rehearing Denied October 21, 1987.
Writ Denied November 20, 1987.
*492 Bolen and Erwin, James A. Kirk and Gregory Erwin, Alexandria, for defendants-appellants.
Fuhrer, Flournoy and Hunter, George Flournoy, Alexandria, for plaintiff-appellee.
*493 Before DOUCET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a backing truck, pedestrian injury damage case that was tried before a jury in Sabine Parish. At the conclusion of the case the trial judge directed a verdict for the plaintiff as to liability. The jury awarded him damages totalling $671,000. Defendants appealed on the basis of 17 assignments of error.
The appeal is presently before us on remand from the Supreme Court. When it was first before us, 507 So.2d 236, a different panel, with Judge Knoll writing the opinion, reversed the trial court judgment because two different judges had participated in presiding over the jury trial. The two-judge complaint was the substance of three of defendants' assignments of error. The Supreme Court granted a writ and, finding no prejudice in the case for two judges to have participated in the jury trial, reversed that panel's judgment and remanded it to us for consideration of the appeal on the merits. 505 So.2d 1131 (La. 1986). It is in this posture that we have reviewed the merits of the 14 remaining assignments of error. We find no merit to any of them, and we affirm the directed verdict in plaintiff's favor. A majority of us, Judge Knoll dissenting, likewise find that the size of the award was not an abuse of discretion in the circumstances of this case and the award, too, is affirmed.

FACTS OF THE ACCIDENT AND THE TRIAL COURT'S CONCLUSIONS AS TO FAULT
The accident happened at about 5:30 A.M. on July 7, 1983. The plaintiff, James Andrews, a laborer at the Boise Cascade wood mill in Fisher, stopped on his way to work to get a cup of coffee at the Roadrunner Restaurant in the Town of Many. He parked his car in a marked parking space in front of the store and went inside.
At about the same time Virgil T. Holloway, a defendant, driving a truck owned by Mosley Well Service, Inc., another defendant, drove up and stopped in the back of the Roadrunner. Holloway's three passengers, who with him were on their way to work for Mosley at a nearby oil well site, went into the Roadrunner to buy their lunch supplies. Holloway stayed outside to fill their water can. After locating the water faucet he found that he had to back out of where he had first parked and go around the restaurant to the front side. Having done this he decided that he would back up into a parking space next to Andrews' car.
In the meantime Andrews came out of the store with his coffee in his hand and went to his car. At his car he opened the door and, placing the coffee on the top of the car, got his car keys from his pocket and reached into the car to put the key into the ignition. As he raised up to get his coffee, he saw a large truck backing into the parking space beside him on the driver's side of his car. Realizing that the truck driver apparently had not seen him and was continuing to back toward the open door, plaintiff dove into his car to get out of the way. The truck hit the door and bent it at a 90 degree angle from the car.
Holloway, the truck driver, testified at the trial that his truck hit the car as he was backing it up. He stated that before he began to back up he saw a black man walk out of the store and start walking toward the parked cars, but he lost sight of the man. He declared that when he first started to back up he looked out of the rearview mirror on the driver's side of his truck and saw Andrews' car and that no one was in it. He then turned his attention to the passenger's outside mirror of his truck and concentrated on the car to the left of Andrews' car as he backed into the space between those two cars. When next he looked through the rearview mirror on the driver's side, he saw Andrews' opened car door and hit the car.
Aside from the detailed testimony of Andrews and Holloway as to how the accident happened, there was an eyewitness who saw the whole thing happen. This witness saw plaintiff walking toward his car, saw the opened door and saw the truck back into the open door.
*494 A waitress who was working at the Roadrunner Restaurant on the morning of the accident testified that after the commotion, Holloway came into the restaurant and told friends he "just didn't see the car."
These were the only witnesses whose testimony contributed directly to determining how the accident happened. At the conclusion of the jury trial, the trial court directed a verdict as to liability in favor of plaintiff, based on a finding that there was not any substantial evidence which opposed the plaintiff's version of what happened, and that he accepted the plaintiff's version of what happened. In the trial court's words:
"I don't feel that any action on behalf of the plaintiff in this case caused the incident. The way I see the evidence was that the driver of the truck simply did not see this man. I accept the plaintiff's version of the case; his version of the facts of the case, and I think his version is supported by all of the other witnesses in the case, including the defense witnesses and including the police officer's testimony. And again, I took copious notes and listened very intently to what they had to say, and I just don't see any substantial evidence which opposes the plaintiff's version of what happened....
"Again, this is not a question of intentional tort, but I just don't think the young man saw the motorist, pedestrian about to be a motorist. I don't think he saw the car door open. He was looking over his right shoulder and as soon as he looked into his left hand mirror, that's when he saw the individual. I think if he had looked into his left hand mirror at some time prior to the incident, he would have seen the activity around plaintiff's vehicle and could have avoided the accident.
"So, to sum up, I do find that the defendants in this case were negligent, having failed to keep a proper look-out; that Baumgartner and other cases cited previously do apply; there was a breach of the duty owed, and that the defendantexcuse me, that the plaintiff in the case, that I should not consider any contributory negligence on his part. But further, that I don't find any negligence in his actions. I don't think he caused this incident. I don't think he caused this incident."

ASSIGNMENT OF ERROR NO. 1

THE ARGUMENT THAT DEFENDANTS WERE NOT ALLOWED TO PRESENT THEIR CASE
The defendants contend that an in limine ruling of the trial court prevented them from putting on evidence on the issue of the plaintiff's comparative negligence, and prevented them from cross-examining plaintiff and his witnesses on that issue.
The trial began on May 13, 1985, and ended on May 16. The comparative fault amendment to La.C.C. art. 2323 had been in effect since 1980. Before 1980, the contributory negligence of a plaintiff generally barred his recovery from a negligent defendant. An exception existed for motorist-pedestrian accidents in the holding of Baumgartner v. State Farm Mutual Ins. Co., 356 So.2d 400 (La.1978), that a plaintiff-pedestrian's contributory negligence was not a bar to his recovery. This was the law in effect at the time of trial.
Before the testimony began plaintiff sought a ruling prohibiting questioning aimed at plaintiff's possible contributory negligence. The trial judge first indicated, and ruled, that he was inclined to agree that under Baumgartner, plaintiff's negligence was not an issue. The defendants, however, persisted in their arguments that the comparative fault principle had supplanted and rendered unnecessary the rule of Baumgartner, and that they should be permitted to prove the fault of plaintiff. The trial court then changed his mind, saying he did not want to limit the testimony and that he wanted the jury "to see all of the facts in the case." The judge told the attorneys that he would make no ruling in advance that would limit the testimony. That the attorneys understood this later ruling is evident in the record. In fact, in their opening statement to the jury, defendants stated that they would prove it was Andrews's negligence, and not Holloway's, that caused the accident.
*495 Our examination of the trial testimony reveals that the defense was allowed complete freedom in their efforts to establish plaintiff's negligence. The trial court's directed verdict as to liability was based on the absence of any substantial evidence of plaintiff's negligence.
On June 20, 1985, one month after this directed verdict, the Supreme Court decided the consolidated cases of Turner v. New Orleans Public Service Inc. and Drum v. United States Fidelity and Guaranty Company, 476 So.2d 800 (La.1985). That decision overruled Baumgartner insofar as it involved the effect of the pedestrian's negligence in such cases, and held that cases like Baumgartner would henceforth be governed by the comparative fault doctrine of C.C. art. 2323.
Defendants argue that Turner should be given retroactive application, that C.C. art. 2323 as amended in 1980 was the law all along.
This assignment of error has no merit simply because the record shows that the defendants were not at all hampered by any pretrial or trial ruling in the presentation of their chosen defenses. They were given complete freedom and limitless discretion in questioning. No objections were made by counsel for plaintiff. No interference was made by the trial court. They were not prevented from presenting their defenses, including the possible negligence of the plaintiff.
The jurisprudential changes then taking place, whether retroactive or not, did not affect the case because the trial judge, in directing a verdict for plaintiff, found no evidence of substance that the plaintiff was negligent at all.
Whether the directed verdict itself was proper is the complaint of the second and sixth assignments of error, to which we now turn.

ASSIGNMENTS OF ERROR NOS. 2 AND 6

THE DIRECTED VERDICT
Defendants say it was error to direct a verdict for plaintiff on the issues of negligence and causation.
The motion for a directed verdict is available by virtue of La.C.C.P. art. 1810. The purpose behind the directed verdict, according to Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), is:
"... `it serves judicial efficiency by allowing the judge to conclude the litigation (in a jury trial) if the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict.' Civil ProcedureWork of Louisiana Legislature for 1977 Regular Session, 38 La.L.Rev. 152, 157 (1977); See also Williams v. Slade, 431 F.2d 605 (5th Cir.1970)."
The court in Campbell concluded that the proper standard for evaluating the motion for a directed verdict was that applied in the federal courts, and, quoting from a federal case, Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969), said:
"`On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'"
Evaluations of credibility of witnesses play no part in reaching a decision on a motion for directed verdict. Campbell v. Mouton, supra, at page 239 and 240. It could perhaps be argued based on language employed by the trial court in directing the verdict that the court made a credibility evaluation of the plaintiff's testimony. *496 Even if he did so, however, that does not deter us from testing his result by the proper standard for a directed verdict, because the entire record is before us, and precisely because evaluations of credibility have no place in a decision for directed verdict, we are in a unique position to apply the test. See Campbell v. Mouton, supra.
In assessing whether a directed verdict finding Holloway negligent (and Andrews free of negligence) was proper, there are two things that must be looked at preliminarily. One is whether plaintiff was a pedestrian at the time of the accident, and the other is the law defining the duty of a driver of a backing truck.
According to Webster's New Collegiate Dictionary a pedestrian is a person on foot. Andrews was a pedestrian standing beside his car when the negligence of Holloway put in motion the events leading to his injury. That is enough. The trial court aptly put it this way:
"He was a-foot. He was not in his automobile. The evidence, I think, clearly shows that he was preparing to get in his automobile. He was standing outside of his automobile, preparing to get in."
We agree with the trial court that the plaintiff was a pedestrian.
The driver of a backing truck has a high duty of care to determine whether it can safely be done. "Backing a truck without knowing whether it can safely be done is grossly negligent." Drum v. United States Fidelity & Guaranty Co., supra.
In the present case, the evidence is all on plaintiff's side. The truck stopped its forward motion and began backing up. When plaintiff became aware that the truck was in motion and backing toward him, he did what he could for his own safety, and in fact succeeded in avoiding being bodily struck by the backing vehicle. He scrambled into his car before the truck got there. His efforts succeeded in removing him from the danger he immediately feared: by jumping into his car he avoided being wedged between the back of the truck and his open car door. His injury, as will be later explained, was caused by the exertion in removing himself from what he perceived to be the greater danger. Plaintiff was intensely cross-examined, his testimony clearly describes that sequence of events, and there is no evidence of substance in the record that opposes a finding of his freedom from negligence.
Holloway, the truck driver, was under a duty to be aware of what was behind him when he backed up. By Holloway's own testimony, once he initially lined up his truck by looking out his left-hand rearview mirror, his backing operation was done as he observed out of the right-hand rearview mirror, and he simply did not see the plaintiff standing there and the car door being opened. He backed up some distance without knowing what was behind him. That was gross negligence. Holloway's conduct, to use the language of Chief Justice Dixon in his dissenting opinion in Mart v. Hill, 505 So.2d 1120 (La.1987), was "the proximate cause, the legal cause, the factual cause and only cause of the accident." We have no difficulty in agreeing with the trial judge that, after a thorough review of the defendant's evidence conducted in the light most favorable to the defendants, and drawing all reasonable inferences most favorable to them, the facts and inferences point so strongly and overwhelmingly in favor of the plaintiff that reasonable and fair-minded men could not arrive at a verdict in favor of the defendants.
The argument is also made that the trial court erred in granting the directed verdict as to causation (between the plaintiff's accident and his damages, if any). We find no error. There was no evidence that Andrews's injuries were caused anywise but by the accident.
The final argument against the directed verdict is that it was error to direct a verdict as to liability and causation without also deciding the issue of damages. The defendants urge that neither the Code of Civil Procedure nor the jurisprudence sanction such a bifurcation.
Counsel for Andrews directs us to Guillory v. Avondale Shipyard, Inc., 448 So.2d 1281 (La.1984), for authority supportive of the trial judge's action in the present case. *497 Though Guillory does not specifically address this question, a review of the history of the reported decision establishes that on its first review on the appellate level [414 So.2d 799 (La.App. 1st Cir.1982)] it was in the same procedural posture as the present case. We regard Guillory as suggestive of the propriety of the bifurcation of liability and damages, in the application of C.C.P. art. 1810. The purpose behind the directed verdict, as quoted from Campbell v. Mouton, supra, also supports the trial judge's action in this case.

ASSIGNMENT OF ERROR NO. 12

EXCUSING PROSPECTIVE JUROR OVER OBJECTION
Defendants contend that the trial judge improperly excused a juror for cause. The prospective juror, James Sepulvado, on voir dire said that he had been hurt several times but he had never collected anything because he did not believe in lawsuits, and that because of this he would have trouble awarding damages in the present case. He was challenged for cause by plaintiff. Defendants tried to rehabilitate this prospective juror and were able to get him to say that despite his feelings he "guessed" he could follow whatever instructions the trial court gave him and, if damages were proved, he "guessed" he could award them. The trial court excused the juror for cause.
A juror may be challenged for cause when he has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial. La.C. C.P. art. 1765(2). Criminal jurisprudence on challenges for cause may be considered in civil cases. Bernard v. Richoux, 464 So.2d 856 (La.App. 5th Cir.1985). A trial court is vested with broad discretion in ruling on a challenge for cause and that ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. State v. Gintz, 438 So.2d 1230 (La. App. 3rd Cir.1983). A reading of the entire voir dire is essential to make this determination. Id. Considering the entire voir dire testimony of this prospective juror, this assignment of error has no merit.
We turn now to the remaining 11 assignments of error, all of which have to do with the award of damages. The issue of damages was the only issue that went to the jury. After both sides had rested their case, and the trial judge had heard and granted a motion for a directed verdict for plaintiff as to liability and causation, the judge then carefully explained to the jury what he had done, and explained what it was that they had to do. He then instructed them on the law regarding damages, and gave them an itemized verdict form, after explaining each item to them, for their use in determining damages, should they decide that any damages were due. The jury unanimously returned the following itemized verdict:
"We, the Jury, award damages to the Plaintiff:

(a) Physical pain and suffering, past and
 future $250,000.00
(b) Mental pain and suffering, past and
 future $ 75,000.00
(c) Loss of enjoyment of life, past and
 future $ 75,000.00
(d) Medical expenses, past and future $ 13,000.00
(e) Lost earnings, past and future $258,000.00"

ASSIGNMENT OF ERROR NO. 9

THE AMOUNT OF THE AWARD
Defendant's principal attack on this verdict is that it was excessive, and we will discuss that issue first. What is disputed is the $400,000 award for general damages (Items (a), (b) and (c)), and the lost earnings award of $258,000 (Item (e)).
James Andrews was 35 years old at the time of the accident. He was married and had three children. He is functionally illiterate and has suffered from a pronounced lifetime handicap of stuttering, but he nonetheless had a good work history and supported his family as a manual laborer. On July 7, 1983, the day of this accident, he was working steadily for Boise Cascade at its mill near his home.
It was established beyond question that the injury was caused by the action of diving into the car to avoid being bodily hit by the truck. The symptoms were immediate. Andrews did not go to work that day but went back home and lay down. The next day he went to see Dr. Garland Miller, *498 a local general practitioner. The extent of observable muscle spasming in Andrews's back caused Dr. Miller to immediately hospitalize him for 15 days with traction. After his release from the hospital and following a period of conservative treatment, including a neck brace and a back brace for over a year, Andrews asked Dr. Miller to let him try to work. He tried, discovered he could not, and had to quit.
The insurer arranged an examination by Dr. Carl Goodman, an orthopedist in Shreveport, who diagnosed a ruptured or bulging disc as a result of the accident. By this time plaintiff was walking with a limp and his left leg had atrophied. Dr. Goodman hospitalized him for a myelogram, which showed a disc problem at L3-4.
Before surgery plaintiff got a second opinion from doctors in Alexandria, where another myelogram and an electromyogram were run. These results confirmed Dr. Goodman's opinion.
Dr. Goodman again examined plaintiff and recommended open surgery, explaining to Andrews the risk that surgery might not improve his condition and could make it worse. Andrews consented and back decompression surgery was performed by Dr. Goodman in November 1984. Some of the bone was removed to get to the disc and an effort was made to enlarge the bony canal so as not to impinge the nerve root, a procedure which the doctor likened to a "Roto-Rooter job." The facet was completely removed. According to Dr. Goodman, Andrews required more extensive surgery than is normally done.
The surgery did not get Andrews well. Dr. Goodman testified that six months later, when he had reached maximum improvement, he was still suffering from stiffness and pain in the left side of the back and the left leg, and that the condition was permanent. The doctor testified that he should never return to manual labor, and that he could not work full-time, could not bend, stoop, push, pull, climb or lift, and could not sit or stand for long periods. Dr. Goodman assigned a 20 percent disability of the body as a whole. He said Andrew's complaints of pain and disability were consistent with his condition, and that his condition was permanent.
There were no other medical doctors testifying in the case.
Andrews testified that since the accident he has been unable to drive a car, wash his feet, work in the yard or take part in recreational activities, like going fishing or playing ball with his sons. He described his only activities as some cleaning of the house and cooking. There was other evidence that Andrews's inability to work and support his family, as well as the severe and permanent restrictions on routine daily activities, has taken its toll on his self-esteem.
Before an award made by a jury should be disturbed, the record must clearly reveal that the jury abused its discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Further, as stated in Reck v. Stevens, 373 So.2d 498 (La.1979), the initial inquiry must always be directed to whether the award for the particular injuries and their effects upon this particular injured person is a clear abuse of the jury's much discretion.
In the present case the record fully supports a finding of permanent disability and permanent pain, as well as greatly restricted activityall caused by the accident. There was no medical or lay contradictory evidence. Andrews's medical and lay witnesses corroborated his testimony. The jury believed plaintiff and his witnesses. The case was thoroughly presented by highly competent attorneys. When we individualize this award to this plaintiff for the consequences of this accident, we conclude that an award of $400,000 for physical and mental pain and suffering and permanent disability is not excessive. It was not an abuse of the jury's much discretion.

ASSIGNMENT OF ERROR NO. 10

THE AMOUNT OF THE AWARD
In a related argument defendants contend that this award was excessive by $75,000 as a matter of law, because the *499 award of that amount for "loss of enjoyment of life" has no acceptable separate identity as a compensable item of general damages in this kind of case. They argue that this $75,000 was therefore a duplicitous award, such considerations as enjoyment of life having already been taken into account in the jury's assessment of damages for pain and suffering. We reject this argument for two reasons. First, the trial judge went to some length in his instructions explaining what "loss of enjoyment of life" meant, and how it differed from pain and suffering. Second, the test of whether there was an abuse of discretion requires us to focus on the total award, and not on item by item. Guillory v. Avondale Shipyard, Inc., 448 So.2d 1281 (La.1984); Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La. App. 3rd Cir.1984); Deshotel v. South Louisiana Contractors, Inc., 484 So.2d 155 (La.App. 3rd Cir.1986); and Thissel v. Commercial Union Insurance Company, 476 So.2d 851 (La.App. 2nd Cir.1985). The total award is not excessive.

ASSIGNMENT OF ERROR NO. 8

THE AMOUNT OF THE AWARD
The defendants take issue also with the loss of income award of $258,000. Of this, it was the testimony of Andrews's economist that $247,518 represented future lost earnings. The opinion of the economist, Dr. Jan Duggar, was based upon total and permanent disability. Defendants argue that because the evidence shows a possibility that Andrews will be able to find some kind of sporadic employment, a permanent total loss of earning capacity was not proved. We disagree. In reaching an award for lost wages the trial court should consider factors such as the injured party's age, life expectancy, work life expectancy, any discount rate and inflation factor which may be applicable, the annual wage rate increase, probable future earning capacity, and the loss of future earning ability and capacity. Unbehagen v. Bollinger Workover, Inc., 411 So.2d 507 (La.App. 1st Cir.1982); Rivers v. Schlumberger Well Surveying Corp., 389 So.2d 807 (La.App. 3rd Cir.1980).
Evidence of all of these factors was presented to the jury. Dr. Goodman, the treating orthopedist, said plaintiff would never be able to do manual labor. Dr. Richard Galloway, a vocational rehabilitation consultant, testified that Andrews's rehabilitative chances were slim, that because of his back, his functional illiteracy, his stuttering, and his low self-esteem, he would probably never be employable because of the practicalities of the situation.
Dr. George E. Hearn, another vocational rehabilitation consultant, testified that Andrews was capable of light duty work and could be retrained with the assistance of job counseling. Dr. Hearn never personally examined or evaluated Andrews. The jury apparently disregarded the testimony of this witness, which was its prerogative. LeBouef v. Gross, 506 So.2d 879 (La.App. 1st Cir.1987).
An award for loss of future earnings requires first a determination of the underlying facts influencing future earning capacity, and then a calculation of the loss based upon those facts. Karl v. Amoco Production Co., 507 So.2d 263 (La.App. 3rd Cir.1987). An appellate court should not disturb findings of fact unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Much discretion is granted the trier of fact in fixing damages. Coco v. Winston Industries, supra. We find no clear error in the jury's obvious findings of fact regarding future earning capacity, and we find no abuse of discretion in its determination of the loss based on those facts.

ASSIGNMENT OF ERROR NO. 7

DISCLOSURE OF POLICY LIMITS TO JURY
The trial judge allowed the disclosure of the liability insurance policy limits to the jury, and this ruling is assigned as error. This was not error. As discussed by Judge Culpepper in Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3rd Cir. 1984), writ denied, 465 So.2d 737 (La.1985), our Supreme Court has indicated in a writ denial in Ashley v. Nissan Motor Corp. in *500 U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), writ denied, 323 So.2d 478 (La.1975), and in Arceneaux v. Domingue, cited supra, that policy limits may go to the jury. This was also the holding in Bishop, supra, and in another case from this circuit, Domingue v. Continental Insurance Company, 348 So.2d 209 (La.App. 3rd Cir.1977).

ASSIGNMENTS OF ERROR NOS. 11, 13 AND 14

JURY CHARGES
It is urged that the language of the verdict form, in combination with the trial judge's instructions, conveyed the impression that the jury was required to find damages. We do not agree. The trial judge, after explaining to the jury what the directed verdict meant, told them it would be their job to determine damages and "what compensation, if any, to be awarded." He told the jury this twice even before taking a recess to prepare the charges. The charge itself clearly instructed the jury that it was their job to determine what, if any, compensation was due.
The defendants complain of the failure to give two requested special charges. One was the charge that Andrews had the burden of proving every item of damages to a legal certainty. In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault, but proof need only be by a preponderance of the evidence, not by some artificially created greater standard. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). The trial judge in the present case addressed the jury at various times during his instructions, explaining the concept of preponderance of the evidence and that "... speculation, mere probability, or unsupported probability is not sufficient to support a judgment ..." We find no error in refusing to give that special charge.
Defendants also submitted the following charge which was refused by the trial judge: "An award for damages cannot be made based upon a possibility that may never happen but must be made upon a reasonable medical certainty." Taking as a whole the jury instructions given, particularly the trial judge's thorough instruction on proof by a preponderance of the evidence, it was not error to refuse to give this special instruction.
The next area of concern is that of instructions regarding proof of economic loss. Defendants tendered an instruction which explained that one factor to be considered in the determination of economic loss would be the reasonable employment opportunities available to plaintiff. Though this particular language was not utilized, the overall purpose of this proposed instruction was covered by the trial judge's admonition to the jury to consider the testimony of each expert witness and weigh each accordingly. An economist, two vocational rehabilitation experts and the treating physician testified each in some degree regarding this issue. Defendants were not prejudiced by the absence of the particular language proposed.
Defendants contend that the trial judge should have used their requested instruction on sympathy in assessing evidence and making a damage award. We disagree. The trial judge specifically charged the jury that its decision must be based on a fair and impartial consideration of the evidence "and could not be governed by passion, prejudice, sympathy or motive."
Defendants also argue that the trial judge erred in failing to instruct the jury in accord with their proposed instruction that it could reject, in whole or part, the damage figures argued by counsel in favor of whatever worth the jury deemed them. There is no merit to this contention. The trial judge specifically charged the jury that the statements of the attorneys were not evidence.
Lastly, defendants argue that one of their proposed charges would have more clearly explained the permissible latitude of the jury in weighing the testimony of experts. We disagree. The judge told the jury it should consider each expert opinion and give it such weight as the jury thought *501 it deserved based upon the evidence. That was a correct statement of the law. A jury is free to accept or reject, in whole or in part, the testimony of any witness. LeBouef v. Gross, supra. We find no errors in the jury instructions.

ASSIGNMENT OF ERROR NO. 15

PREJUDICIAL REMARKS OF COUNSEL
Defendants contend that counsel for Andrews made prejudicial remarks during arguments over objections made to testimony of Dr. Hearn, an economist tendered by defendants. They argue that counsel for Andrews suggested to the jury that defense counsel did something improper in procuring Dr. Hearn's testimony a few days before trial and in failing to share his report with Andrews's attorney. The trial court overruled plaintiff's objection and allowed Dr. Hearn to testify. If any damage was done by the comments, the damage was undone by that ruling.
In any event, defendants have waived their right to appellate consideration of this issue. They never asked the trial judge to strike counsel's comments from the record, to admonish the jury not to consider the statements, or to grant a mistrial. See Johnson v. H. W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir.1970).

ASSIGNMENT OF ERROR NO. 16

CROSS-EXAMINATION OF PLAINTIFF
Defendants contend the trial judge erred when he prohibited them from impeaching Andrews's testimony by asking him questions about allegations he made in what may have been another law suit he filed against defendants. There is in the record an original petition in which Andrews sought damages from defendants and an amending petition increasing the amount of damages. Through brief we learn that possibly Andrews filed an earlier and separate law suit against defendants. We are unable to evaluate this assignment because that other pleading, if there was one, is not in the record and cannot be considered on appeal. Cf. Succession of Bates, 227 So.2d 19 (La.App. 2nd Cir.1969).
In a related issue defendants argue that the trial judge erred in sustaining Andrews's objection to defendants' cross-examination of him using his answers to interrogatories. The very limited issue at trial in this regard was whether Andrews listed a witness to the accident prior to trial and, if so, when. The witness in question, Mrs. Rosie Long, testified in this cause prior to Andrews's testimony without objection from defendants. Accordingly, any ruling we would make on this issue would be moot. We do not address it.

ASSIGNMENT OF ERROR NO. 17

EFFECT OF INCOME TAXES ON LOSS OF FUTURE EARNING CAPACITY
The final assignment of error is levelled at a ruling allowing plaintiff's economic expert to calculate lost earnings on gross income without adjustment for income taxes. This was not error. Lute v. City of Lake Charles, 394 So.2d 736 (La. App. 3rd Cir.1981).
For the foregoing reasons, the judgment of the trial court is affirmed, the appellants to pay the costs of this appeal.
AFFIRMED.
KNOLL, J., dissents and assigns written reasons.
KNOLL, Judge, concurring in part; dissenting in part.
I concur with the majority that defendants are liable. However, I disagree with the majority affirming the $400,000 general damages award. There are no special circumstances in this case that would justify the jury's award. Further, in my view the jury verdict form contained a duplicitous item, namely, "Loss of enjoyment of life, past and future" and awarded plaintiff $75,000. For physical pain and suffering, past and future, the jury awarded plaintiff $250,000, and for mental pain and suffering, past and future, the jury awarded $75,000. After making awards for physical *502 and mental pain and suffering, the award for loss of enjoyment of life is duplicitous. Therefore, I respectfully dissent, finding the damage award excessive and duplicitous.