649 So.2d 523 (1994)
Charles A. BENOIT, Plaintiff-Appellant,
v.
Russell DEVILLIER and Jerry Darbonne, Defendants-Appellees.
No. 94-514.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Writ Denied January 27, 1995.
*524 Bret Christopher Beyer, for Charles A. Benoit.
John H. Ayres III, Alvin R. Washington, Carolyn Devitis, and Robert Reiger, for Russell Devillier et al.
Jennifer M. Kleinpeter, for La. Water Co.
Before GUIDRY, C.J., and KNOLL and THIBODEAUX, JJ.
KNOLL, Judge.
This appeal involves the trial court's refusal to grant attorney's fees to Charles Benoit in this mandamus action brought under the provisions of LSA-R.S. 44:35(D), the Public Records Act. The trial court concluded that even though Benoit was partially successful in his litigation, he was not entitled to attorney's fees because he filed his mandamus action after the three years in which the defendants, Russell Devillier and Jerry Darbonne, both employees of the Louisiana Public Service Commission (hereafter Public Service Commission), were obligated to keep the records that he sought.
Benoit contends that the trial court erred: (1) in limiting the hearing on October 4, 1991, to the sole issue of whether "the letter" existed; (2) in refusing to allow any evidence or testimony at the new trial it ordered on October 15, 1993; (3) in applying the common law doctrine of laches; (4) in making clear error in certain factual findings contained in its supplemental reasons for judgment of February 24, 1992; and, (5) in refusing to award statutory penalties and attorney's fees under LSA-R.S. 44:35(D) and (E).

FACTS
This litigation has its beginnings in a billing dispute that involved a water loss that occurred at Charles A. Benoit's property in Crowley, Louisiana, in February of 1985. On May 5, 1988, Benoit contacted Russell Devillier, an agent and employee of the Public Service Commission, to lodge a complaint against Garland Hanks and the Louisiana Water Company (LAWCO), pertaining to the bill.
Subsequently, in conversations with Devillier, Hanna Zaunbrecher, the secretary for the Public Service Commission, and Jerry Darbonne, Devillier's supervisor, Benoit alleges that he learned of a letter LAWCO supposedly wrote to the Public Service Commission, alleging that Benoit had three separate water contracts at three addresses in Crowley. Benoit's verbal requests for copies of the Public Service file, and a written request *525 on May 23, 1988, went unheeded. Ultimately, during depositions taken in ancillary litigation, Benoit learned that as of January 9, 1991, the Public Service Commission file had been destroyed.
On June 5, 1991, Benoit filed a petition in Acadia Parish seeking a writ of mandamus and rule to show cause under LSA-R.S. 44:35, asking for the production of the Public Service Commission's file, together with attorney's fees, civil penalties, and costs of litigation. The Public Service Commission filed a declinatory exception of improper venue and a peremptory exception of prescription. However, by joint motion, Benoit's petition was voluntarily transferred from Acadia Parish to St. Landry Parish, thereby making the venue exception moot. It was specifically noted that the Public Service Commission reserved the right to raise its peremptory exception when the case was transferred to St. Landry Parish.
After the case was transferred to St. Landry Parish, a status conference was held on September 26, 1991, and a hearing was held on October 4, 1991. On February 5, 1992, the trial court held that a writing that constituted a public record existed when Benoit demanded examination of the disputed file, but at the time of the hearing, it no longer existed. Pursuant to that finding, the trial court held: (1) it could not order compliance with the writ of mandamus, since the file no longer existed; (2) civil penalties of $100 per day could not be ordered because this penalty provision did not become law until after the disputed file was destroyed; and, (3) awarded Benoit $2,000 attorney's fees since he was at least partially successful in his litigation.
However, in supplemental reasons for judgment dated February 24, 1992, the trial court stated that it failed to address the Public Service Commission's peremptory exception of prescription. The trial court rescinded its award of attorney's fees, finding that at the time Benoit filed his petition for a writ of mandamus, more than three years had elapsed since the creation of the file, and thus it could have legitimately ceased to exist by that time. After finding that Benoit's suit was untimely, the trial court determined that the petition was barred by laches.
The trial court later granted a hearing on Benoit's motion for a new trial, limiting argument to the issue of the applicability of laches. After hearing oral argument, the trial court rejected all of Benoit's demands and dismissed the proceedings with prejudice, at Benoit's costs. This appeal followed.

OCTOBER 4, 1991, HEARING
Benoit contends that the trial court erred in limiting the October 4, 1991, hearing to the sole issue of whether the letter from LAWCO to the Public Service Commission existed.
From the outset, we note that the transcript of the October 4, 1991, hearing is not part of the formal record filed in the appellate court. Instead, Benoit has attached a transcription of the hearing to his appellate brief.
After a record has been transmitted to the appellate court, generally it can be supplemented by stipulation of the parties, by the trial court, or by order of the appellate court, only if the evidence was actually introduced at trial. Andrews v. Mosley Well Service, 507 So.2d 236 (La.App. 3 Cir.1986), reversed on other grounds, 505 So.2d 1131, on remand, 514 So.2d 491, writ denied, 515 So.2d 807 (La.1987). In the interest of judicial economy, we will, on our own motion, order the record supplemented to include the transcription of the October 4, 1991, hearing, since the litigants both allude to testimony taken during the hearing, and it is clear to us that this hearing did take place.
We have carefully examined the transcript of the October 4, 1991, hearing and find that although the trial court originally limited Benoit to adduce evidence of whether a particular letter from LAWCO existed, the transcript belies Benoit's assertion. To the contrary, it is clear that the trial court further allowed Benoit to place evidence into the record about the existence of a Public Service Commission file on Benoit's complaint against LAWCO. Having so decided, we find that there is no factual basis for Benoit's contention to the contrary.

*526 LIMITATION OF THE NEW TRIAL HEARING TO ORAL ARGUMENT
Benoit next contends that the trial court erred in granting a new trial limited to reargument on the applicability of laches. He argues that the trial court should have let him present additional testimony on the issue of whether he sat on his rights.
LSA-C.C.P. Art. 1971 specifically provides that the trial court may grant a new trial "on all or part of the issues, or for reargument only." Clearly, under Article 1971 the trial court was within its discretion when it decided to limit the hearing on Benoit's motion to oral argument. However, arguendo, for reasons that follow, we find no error in the trial court's denial of the motion for new trial.
Despite the trial court's limitation of the hearing to oral argument, the record shows that before making its final determination, the trial court allowed Benoit an opportunity to recite facts which he would present if testimony were permitted. Moreover, during the October 4, 1991, hearing, Benoit's attorney specifically told the trial court that although Benoit first sought the Public Service Commission file on May 13, 1988, he did not commence his suit for a mandamus under Title 44 of the Revised Statutes until June 5, 1991, a delay in excess of three years. Benoit's reason for the delay was that he was not aware of the mandamus provisions available under the Public Records Act which could have been used to obtain the file. Based on this evidence, we do not find that the trial court erred in denying Benoit's motion for a new trial.

APPLICABILITY OF THE DOCTRINE OF LACHES
Benoit next contends that the trial court erred in dismissing his petition for mandamus because of the doctrine of laches. He argues that LSA-C.C. Art. 3457 states that there is no prescription in Louisiana other than that established by legislation and that the jurisprudence holds that the doctrine of laches has no place in the law of Louisiana.
On the other hand, the employees of the Louisiana Public Service Commission contend that the trial court properly applied the equitable doctrine of laches. They point out that LSA-R.S. 44:35 contains no time limitation for an enforcement action. Accordingly, they assert that the trial court properly resorted to LSA-C.C. Art. 4 and decided this litigation according to equity.
The trial court provided written reasons for judgment that state, in pertinent part:
"R.S. 44:35 provides that a person may enforce the provisions of the Public Records Act by mandamus, and civil penalties and attorney's fees are provided for as ancillary relief. The statute does not provide any special time limitations in which the action may be brought. There is no time limitation in C.C.P. Arts. 3861 through 3866 (Mandamus) in which an action for mandamus may be brought. Also the Civil Code Articles 3445 through 3492 (Prescription) do not provide any time limitation for instituting mandamus proceedings. Since there are no specific statutes providing a time limitation in which to bring [a] mandamus action, the Courts have generally resorted to the doctrine of laches to prevent the pursuit of a tardy action for mandamus. State ex rel Lemoine v. Municipal Democratic Executive Committee of the Town of Mansura, 234 La. 969, 102 So.2d 234 (1958); State ex rel Boudreaux v. Alford, 205 La. 46, 16 So.2d 901 (1944).
* * * * * *
R.S. 44:36 obligated the defendants in this case to retain the disputed records in this case for at least three years from the date they were made ... This Court finds that any suit to enforce the demand for the records within the three year period in which the defendants were obligated to maintain them would be timely and not subject to laches. The suit in this case was not filed until long after the three years in which the defendants were obligated to keep the records had passed. The suit was not timely and subject to laches."
Initially, Benoit argues that the doctrine of laches does not exist in Louisiana. We disagree.
LSA-C.C. Art. 4 provides:

*527 "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages."
Article 4 establishes that it is only in instances where legislation or custom are silent that the trial court may permissibly resort to equity as the basis for its decision. It is on this basis that we distinguish the cases Benoit cites in support of his position that the common law doctrine of laches does not exist in Louisiana. In Picone v. Lyons, 601 So.2d 1375 (La.1992), laches was inapplicable because the underlying claim was delictual and thus, there was a prescriptive period provided. Similarly, in Corbello v. Sutton, 446 So.2d 301 (La.1984), the Louisiana Supreme Court concluded that resort to laches was unnecessary since an appropriate time delay existed under LSA-R.S. 49:964(B). Lastly, in an appellate court decision, Hendee Homes, Inc. v. Sheriff of Jefferson Parish, Harry Lee, 614 So.2d 733 (La.App. 5 Cir.), writ denied, 616 So.2d 707 (La.1993), equity could not be the deciding rationale because there was a two-year prescriptive period specifically stated in LSA-R.S. 9:5623. Unlike those instances, in the present case it is undisputed that no prescriptive period exists for the initiation of a mandamus action.
Commenting on the doctrine of laches, the Louisiana Supreme Court stated in Barnett v. Develle, 289 So.2d 129, 139 (La.1974):
"The doctrine of laches is predicated on equity. It addresses itself to the evidentiary effect of delay. It is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of a matter in controversy, and doing justice between parties and on the public policy of discouraging stale and antiquated claims in the interest of the peace and repose of society." (citation omitted).
Having seen that the threshold requirement for the applicability of Article 4 has been met in the present case, we find that the trial court properly utilized equity, although it was improperly referred to as laches, as the basis for its resolution of the issues presented in Benoit's petition for a writ of mandamus.
In analyzing the trial court's holding, Benoit further contends that the trial court relied upon erroneous facts to resolve the issue. He first states that the trial court erroneously concluded that the Public Service Commission file in question was created in 1985, instead of 1988. Next, he points out that he filed his mandamus action in June of 1991, not August of 1991 as stated by the trial court. The Public Service Commission employees do not dispute that the trial court misstated the facts in its written reasons, but assert that the trial court nonetheless made the correct decision. We agree.
Assuming that the Public Service Commission did not first compile its file until May of 1988, under LSA-R.S. 44:36, it was required to keep its file until May of 1991. In reaching its equitable decision, the trial court had evidence that Benoit had tape-recorded telephone calls and conferences with the Public Service Commission employees which definitively show that he had knowledge of the letter he sought in his mandamus action as early as May of 1988. Despite his knowledge of the existence of this letter and a file related to his complaint against LAWCO and the Public Service Commission's refusal to voluntarily provide him with the letter/file, Benoit did not mandamus the Louisiana Public Service Commission until June of 1991, more than 3 years after he had knowledge of the letter in question. Based on these facts, we cannot say that the trial court was manifestly erroneous in its use of equity to resolve this dispute.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Charles A. Benoit.
AFFIRMED.