1GREMILLION, Judge.
The defendants, Poston White and Safeway Insurance Company, and Allstate Insurance Company, appeal the judgment rendered in favor of the plaintiff, Gregory K. Homage. For the following reasons, we reverse in part and affirm in part.
FACTUAL AND PROCEDURAL BACKGROUND
Homage, a passenger in a Toyota pickup owned by Herman Williams and insured by Allstate,[1] filed suit for injuries he suffered arising out of a June 1999 accident with an Oldsmobile Cutlass driven by Poston White, that was owned by David Roy and insured by Safeway. The accident occurred in the employee parking lot of Doane Products Company. Following a bench trial in May 2002, the trial court found that Williams and White shared equal responsibility for the accident. It further found that Homage was without fault as he was a guest passenger, and awarded him $50,000 in general damages. Allstate, White, and Safeway timely appealed to this court.
ISSUES
Allstate, White, and Safeway assign as error:
1. The trial court’s finding that White was fifty percent at fault.
2. The trial court’s award of $50,000 to Homage when there was no causal connection between Homage’s medical condition and the accident.
DISCUSSION
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
Id. at 844.
Though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring Co., 283 So.2d 716 (La.1973). “The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
The trial court did not assign written reasons for judgment, although at the end of the trial it stated:
The court finds that there was an accident in the parking lot of a local company by two employees during the beginning of the lunch period. The court notes that the testimony reveals that each driver failed to notice the other vehicle in time to avoid the collision as it was not until the vehicles had collided that the parties realized that the other was in that area. No horns were blown by either party. With this in *1029 mind, along with the eagerness of employees to make the most of their lunch period, the court notes that it compares this period of time during the day for most places as a quiet stampede. All right, be that as it may, the court finds that Herman Williams is 50% at fault in causing this accident and that Poston White is 50% at fault also in causing this accident. The passenger, Gregory Hor-nage, is without fault as he was a guest passenger and as such is entitled to recover general damages, and this | ¡¡court awards Mr. Homage a general damage award of $50,000 plus interest on all sums, all costs of court. Further, defendants are given credit for any amounts they’ve already paid. All right.
FAULT ALLOCATION
The trial court assigned White with fifty percent of the fault in causing this accident. The Defendants urge that it was unrefuted that White was at a complete stop when Williams backed his vehicle into him. Homage argues at length regarding the duty of a driver who is backing up his motor vehicle, citing Francis v. Commercial Union Insurance Co., 90-751 (La.App. 3 Cir. 2/12/92), 594 So.2d 1025. Based on our review of the record, we find it was manifestly erroneous for the trial court to assign White fifty percent of the fault in causing this accident. White had safely backed up his vehicle and was at a complete stop when he was hit by the vehicle driven by Williams.
White testified that he successfully backed Roy’s vehicle out of the parking spot, came to a stop, and was in the process of changing gears from reverse to drive when he was impacted by Williams’ vehicle. He stated that, before completing this maneuver, he looked behind the vehicle to make sure no one else was moving. This action placed the Roy vehicle perpendicular to the Williams vehicle; however, White testified that the only portion of the Roy vehicle that was directly behind the Williams vehicle was the front bumper, no deeper than to the front tires. White stated that the rear-passenger bumper of the Williams vehicle impacted the right front fender of the Roy vehicle.
Williams testified that after he and Hor-nage got into his track, he looked into his rearview mirror and then over his right shoulder, but did not see the Roy Lvehiele. He proceeded to back up, and stopped when he impacted the Roy vehicle. He stated that the Roy vehicle was six to eight inches into his lane and that he could not see the vehicle because of a Lincoln Continental that was situated between his truck and the Roy vehicle. He also said that he could not see out of the right side mirror because Homage was in the process of putting on his seatbelt and was blocking his view of the mirror. Williams further stated that he “probably” would have been able to see the Roy vehicle in the right side mirror if his vision had not been obstructed by Homage. In a previous deposition in which he had described the accident, Williams stated:
As I proceeded to release the clutch and move backwards, I could hear, ‘whoa, whoa, whoa,’ and when I looked over my shoulder, I looked in David Roy’s face, and at that point is when I made contact with his car.
However, at trial he denied making these statements.
Mark Lucas, the warehouse supervisor at Doane Products Company, witnessed the accident. He stated that he was around fifteen feet from the accident and observed that the Roy vehicle was at a complete stop when it was impacted by the Williams vehicle. He did state that prior to the impact, he heard Roy “hollering” at Williams in order to get his attention.
*1030 Roy also testified that his vehicle was completely stopped when the Williams vehicle impacted it. He stated that White was in the process of shifting from reverse to drive at the time of the impact.
In Francis, 594 So.2d at 1026, we addressed the duty of a backing motorist as found in La.R.S. 32:281(A), and stated:
La.R.S. 32:281(A) provides that “[t]he driver of a vehicle shall not back the same unless such movement can be made with reasonable | ^safety and without interfering with other traffic”. In Turner v. New Orleans Public Service Inc., 476 So.2d 800, 802 (La.1985), the Louisiana Supreme Court, in citing the above quoted statute, stated the rule that “backing [a vehicle] without knowing whether it can be safely done is grossly negligent”. This principle has been followed by the Courts of Appeal in subsequent cases such as Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3 Cir.1987), writ denied, 515 So.2d 807 (La.1987); Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051 (La.App. 4 Cir.1989). The driver of a backing vehicle has a high duty of care to determine whether it can be done safely. Andrews, supra, at 496. Although the accident in question occurred on private premises, the general principles above set forth are applicable in determining the issue of negligence.
It is clear from our review of the record that White had successfully completed his backing maneuver and was in the process of switching gears to drive in order to exit the parking lot. There was no evidence to indicate otherwise. In this stopped position, White was hit by Williams vehicle, who was grossly negligent in failing take note of the Roy vehicle. Further, Williams admitted that he probably would have seen the Roy vehicle if Homage had not been blocking his view of the right rear mirror.
The trial court made mention of the failure of both parties to blow their horns. We find no such duty existed. Moreover, if every backing motorist blew their horn to indicate their actions, we believe that more accidents would result. In Francis, the employees in the service areas of an automobile dealership were required to honk their horns to alert others that they were moving around the garage. Such is not the case here. We find it was manifestly erroneous for the trial court to find that both parties were negligent for failing to blow their horns.
Finally, the trial court made mention of a “stampede” to get out of the parking lot during the lunch hour. No such evidence existed in the record to support |fithis finding. In fact, the evidence suggested that around eight to ten employees left the parking lot to go to local establishments that were within a mile from the plant. No one testified that everyone left in a “rushed” pace. We find this conclusion manifestly erroneous.
Homage further argues that the trial court did not commit manifest error in assigning White fifty percent of the fault because White put the Roy vehicle in a “position of peril.” Homage cites Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051 (La.App. 4 Cir.1989), for this proposition. We disagree. The facts of that case are distinguishable from the ones in this instance. In Ward, the plaintiff watched as the defendant’s employee backed up the eighteen-wheeler he was driving. However, the plaintiff proceeded to maneuver his vehicle in a position directly behind the truck and then stop. The court held, “Because [the plaintiff] had placed his vehicle in a position of peril and should have been aware to some extent that the truck was backing in a dangerous *1031 position, the trial court found that [the plaintiff] was one-third comparatively negligent.” Id. at 1052. The court of appeal affirmed the judgment of the trial court. White did not back the Roy vehicle into a position of peril. He completed his backing maneuver and was waiting his turn to exit the parking lot. The duty was upon Williams to successfully back out of his parking spot once he had surmised that it was safe to do so.
Based on our review of the record, we find the trial court manifestly erred in assigning White fifty percent of the liability. We, therefore, reverse that portion of the judgment and find that Williams bears one hundred percent of the liability in causing this accident.
^DAMAGES
The trial court awarded Homage $50,000 in general damages. Because of our finding above, only Allstate appeals the general damage award. The trial court’s findings are accorded great weight when reviewing a general damage award and should rarely be disturbed absent a showing of clear abuse of discretion. Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206. Thus, we must determine whether the trial court’s award “is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances” before we may adjust the award. Id. at 1210.
Allstate urges that there was no evidence in the record to suggest that Hor-nage’s surgery was in any way causally connected to the accident. It is true that the only evidence offered was Homage’s own testimony that the surgery was performed due to neck pain that developed as a result of this accident. While it is true that a plaintiffs unrefuted testimony should be accepted as true, it will not be if circumstances exist that cast suspicion on the reliability of his testimony. See Guillory v. International Harvester Co., Inc., 99-593 (La.App. 3 Cir. 10/13/99), 745 So.2d 733, writ denied, 99-3237 (La.1/14/00), 753 So.2d 220.
Williams testified as to the minimal damage to his vehicle and stated that he did not suffer any injuries from the accident. He also stated that he and Homage went to lunch following the accident, but that Homage later stated his neck was hurting.
IsMark Lucas stated that there was no change in Homage’s work habits or duties following the accident and that his position included operating a forklift and lifting forty-four pound bags of dog food.
Roy also testified that Homage’s work performance following the accident was the same. Roy also described witnessing an accident, following the one in question, in which Homage was “slammed” into a pallet of dog food in his head and neck area.
Regina Lewis, Homage’s fiancé, testified that she accompanied him to the Rap-ides Regional emergency room on the day of the accident in question. She stated that, prior to this ear accident, Homage had never had any injuries to his neck or pain in that area. She stated that Hor-nage began experiencing pain related to the car accident about a month after it happened.
Homage testified that, following the accident, he sat in the truck for several minutes because he had been “slammed to the crown of the window of the door.” He stated that he decided to go to the emergency room because his muscles were hurting, and began seeing a chiropractor, Dr. Boisvert, following the accident. Dr. Boisvert’s records indicate that Homage *1032 saw him three to four times over a six-week period following the accident, and once in November 1999. The medical records reveal that Homage had an MRI in February 2000. In March 2000, Homage began treatment with Dr. John Jackson, a neurosurgeon, who recommended surgery. Homage underwent an anterior cervical fusion with removal of a ruptured disc in April 2000.
| flHornage denied any accident involving the forklift. In deposition testimony, he stated that, following the June 1999 accident, he was in a fight with his fiancé’s son that resulted in him having a black eye, scratches, and bruises to his face. However, at trial, he denied having a black eye and bruises on his face.
While it is true that Homage contradicted himself at trial and there appears to be some intervening incidents that may have contributed to his neck problems, we are weary of disturbing the trial court’s wide discretion in this area. Although the trial court did not provide any reasons in its ruling, it apparently found Homage’s testimony credible. A reasonable person could have credited Homage’s version of events, and thus, we will not disturb this finding on review. Moreover, we do not find the award of $50,000, to be beyond that which a reasonable person would assess for this particular injury to Homage. This assignment is without merit.
CONCLUSION
The judgment of the trial court assigning the defendant-appellant, Poston White, fifty percent of the fault in causing this accident is reversed. Herman Williams is assigned with one hundred percent of the fault in causing this accident. The damage award in favor of the plaintiff-appellee, Gregory Homage, is affirmed. Costs of this appeal are to be assessed equally among the parties.
AFFIRMED IN PART AND REVERSED IN PART.

. Allstate is appealing in its capacity as the uninsured motorist insurer for Williams.