455 So.2d 1175 (1984)
Constance A. OTTO
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 83-C-0620.
Supreme Court of Louisiana.
September 10, 1984.
Thomas L. Giraud, Charles A. Verderame, Giraud, Cusimano & Verderame, New Orleans, for applicant.
Edward P. Lobman, Alice M. Lewis, Lobman & Carnahan, Metairie, for respondent.
LEMMON, Justice.[*]
This case involves a highway collision between plaintiff's automobile and an oncoming 18-wheel tractor-trailer which occurred in the truck's lane of traffic. Plaintiff's suit against her uninsured motorist carrier alleged that she was struck in the rear by an unknown motorist, causing her to lose control. The trial court dismissed plaintiff's suit on the basis that plaintiff was presumed to be negligent because the collision occurred in the opposing lane of traffic. The court of appeal affirmed on the basis of the manifest error rule. 426 So.2d 709 (La.App.1982). We granted certiorari. 433 So.2d 157 (La.1983). Concluding that it was improper for the trial court to apply such a presumption in a liability determination between the plaintiff and a party other than the motorist in whose lane plaintiff collided, we reverse the judgment and render judgment in favor of plaintiff on the basis of the evidence in the record.
The accident occurred in mid-afternoon on a clear, dry day on a two-lane highway. The left front of plaintiff's car struck the *1176 front left side of an oncoming tractor-trailer unit driven by Lipton Rivet, after Rivet attempted to pull onto the right shoulder to avoid the collision. Plaintiff's car bounced off the truck and came to rest across the road, perpendicular to her prior path of travel, near the point of impact. The truck came to rest in the ditch, forward from the point of impact. There were skid marks only in the truck's lane.
According to plaintiff's testimony, she had been traveling west at a speed of approximately 40 miles per hour behind a passenger car when the traffic in front of her suddenly slowed. She felt a "tap or little bump" and saw through the rearview mirror a woman in a camper or van immediately behind her. The woman suddenly hit her again and pushed her into the opposing lane of traffic, and she remembered nothing further (not even seeing the 18-wheel tractor-trailer). However, she expressly denied at trial that she had attempted to pass the preceding vehicles.
Because she was unconscious after the accident, plaintiff could not then relate her version of the occurrence. Consequently, the investigating officers did not search for debris in the area of the claimed first impact or for a witness to that collision. When the tube was removed from plaintiff's throat seven weeks after the accident, she immediately told the story she related in her trial testimony.
In support of her claim, plaintiff introduced a photograph taken by police at the scene, which showed damage to plaintiff's car on the extreme right of the bumper and on the right rear fender, as well as an extensive scratch along the side of her right rear fender and right rear door.[1] Those damages do not appear to be related to the damage to the left front area of plaintiff's car which was sustained in the collision with the truck. She also presented the testimony of her son and daughter-in-law, who stated that they were familiar with plaintiff's car (which formerly belonged to plaintiff's son), that they had washed and waxed the car two weeks before the accident and had parked behind the car in plaintiff's driveway on the morning of the accident, and that there were no dents on the rear of the vehicle prior to the accident except for a small dent on the bottom of the middle section of the bumper.
Deborah Rees, who was driving the passenger car directly in front of plaintiff, gave a statement (to defendant's adjuster) which was introduced into evidence by stipulation. Plaintiff's car had been directly behind her for several miles while she was driving about 45 miles per hour in heavy traffic. Just before the accident, she glanced into her rearview mirror and saw plaintiff's car in the eastbound lane of traffic, and immediately thereafter she saw the collision. She did not know how plaintiff's car got into the eastbound lane. Miss Rees' mother, who was a passenger in the vehicle driven by her daughter, corroborated plaintiff's claim of a slow-down in traffic just prior to the accident by testifying that a slow-moving vehicle directly in front of them made a left turn from the highway about 200 yards before the point of the accident.
Paul Polos, a passenger in Rivet's truck, testified that plaintiff suddenly came out of bumper-to-bumper traffic, almost hitting the car in front of her, and appeared suddenly in their lane in front of them. He stated that her head was down on the steering wheel when he saw her about 15 feet away.
Rivet testified by deposition following the trial that plaintiff moved into his lane of traffic, about 40 yards ahead of him, that she "came around a van and a camper", and that "it looked like she was trying to pass them". In an attempt to avoid the collision, he slowed down and pulled as far over to his right as possible. Immediately before the collision, he saw plaintiff's head lowered onto the steering wheel. At no *1177 time did his vehicle make any contact with the rear of plaintiff's car. Interestingly, he emphatically stated that the van was directly in front of plaintiff's car (directly contrary to the testimony of Miss Rees and her mother that plaintiff had been following directly behind them for several miles and also contrary to Polos' testimony that plaintiff as she pulled out almost hit the car in front of her) and that a camper (or "home on wheels") was in front of the van. He further stated that a woman was driving the camper, that plaintiff was at a point between the van and the camper when the collision occurred, and that the camper and van had pulled partially off the highway at the moment of impact.[2]
The trial court, in reasons for judgment, determined that plaintiff, in addition to the burden of proving the accident was caused by the negligence of the unknown hit-and-run driver, also had the burden of overcoming the presumption of her own negligence on the basis that the accident occurred in the opposing lane of traffic. Concluding that plaintiff had not borne this higher burden, the court rendered judgment in favor of defendant. The court of appeal, without discussing this additional burden of proof imposed upon plaintiff, held that the trial court was not manifestly erroneous in concluding that plaintiff had failed to prove by a preponderance of the evidence that she was struck from the rear by a third vehicle.
The presumption applied by the trial court has been invoked by defendants when the evidence showed that the defendant-motorist was in his proper lane of traffic at the time of the collision and the plaintiff-motorist was not. Noland v. Liberty Mutual Ins. Co., 94 So.2d 671 (La.1957); Meskill v. Allstate Ins. Co., 247 So.2d 163 (La.App. 3rd Cir.1971). Whatever validity such a presumption would have had if plaintiff in this case had sued the tractor-trailer driver, no such presumption flows in favor of a motorist who allegedly ran into the rear end of plaintiff's vehicle in plaintiff's own lane. Neither can the presumption favor plaintiff's uninsured motorist carrier, who is contractually liable to pay the damages the hit-and-run motorist would be legally liable to pay. Plaintiff's only burden of proof was to show by a preponderance of the evidence that she had been struck in the rear in her lane of traffic by a hit-and-run driver and that this impact caused her to veer into the opposite lane of traffic.
The trial judge erred in applying incorrect law to the facts of the case. When the trial court applies the wrong law, no weight should be accorded to the judgment of the trial court, and the manifest error rule does not apply. Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707 (La. 1980); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975). The court of appeal, therefore, improperly relied on the manifest error rule. Accordingly, the judgments of both lower courts must be set aside.
When a judgment of the court of appeal is reversed because of incorrect application of the manifest error rule, the normal procedure would be to remand to the court of appeal for determination of liability and quantum on the basis of the record. However, the parties have stipulated that, if plaintiff is entitled to recovery, her damages exceed the limits of insurance coverage. Because of this stipulation, and because it was necessary for this court to review the entire record on liability in order to decide that the manifest error was applied erroneously, judicial efficiency *1178 dictates disposition of the liability issue by this court.
We have independently reviewed the record, without according any weight to the erroneous trial court judgment, and have determined that plaintiff is entitled to recovery on the record. There was uncontradicted evidence that the rear end of plaintiff's car had considerable damage after the accident which had not been there earlier that day. Rivet disclaimed any contact between his truck and the rear of plaintiff's car. The additional damage to the right rear bumper and right fender does not appear to be the result of the truck's impact with plaintiff's left front. Moreover, an impact to the right rear is the type of impetus which would propel a moving car to the left of the prior path of travel.
Plaintiff's testimony that she was following a car was corroborated by Miss Rees, Mrs. Rees and Polos, all of whom contradicted Rivet's confusing testimony about plaintiff's attempt to pass a van and camper. Still, Rivet's testimony did corroborate the presence of a camper driven by a woman, as claimed by plaintiff.
Certainly, the oncoming 18-wheel tractor-trailer was visible to one in plaintiff's position who might contemplate a passing maneuver. Moreover, plaintiff had no reason to pass a car she had been following for several miles in heavy traffic when she was to make a right turn off the highway about half a mile from the accident. Finally, a passing attempt in heavy traffic by plaintiff at that point in time was unlikely, in view of Mrs. Rees' testimony that a slow-moving vehicle had just turned off the road and her daughter had just accelerated for about 200 yards when the accident occurred.
For these reasons, the judgment of the lower courts are reversed, and judgment is rendered in favor of Constance A. Otto and against State Farm Mutual Automobile Insurance Company in the amount of $100,000, together with legal interest from the date of judicial demand until paid, and for all costs of these proceedings.
NOTES
[*] Bailes, Justice, ad hoc, sitting for Justice Marcus.
[1] The officer testified that he photographed the obvious damage on the rear of plaintiff's car "to indicate any other damage that might have occurred", but that there was no indication that the damage in that area was caused by the collision with Rivet's truck.
[2] Rivet also testified that he gave a statement to his employer after the accident. Contending that he had sought such a statement by interrogatories and been informed that no statement had been taken, plaintiff's counsel filed a motion in the court of appeal to remand the case to permit further cross-examination of Rivet. Counsel reurges that motion, contending that Rivet's statement (finally obtained after the trial court rendered judgment) contains a diagram showing plaintiff's path at an angle, inconsistent with the appearance of a normal passing maneuver.