524 So.2d 1369 (1988)
Betty Sue Sherrill MICHEL
v.
ASCENSION PARISH POLICE JURY.
No. CA 87 0350.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*1370 Gregory N. Bilyeu and Mac Trelles, Jr., Baton Rouge, for Betty Sue Michel, plaintiff/appellee.
Gordon Crawford, Gonzales, for Ascension Parish, Police Jury appellant.
John W. King, Baton Rouge, for State.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal of a judgment awarding damages to a widow and children in a wrongful death action.
In 1977, Charles Michel died from drowning after he drove his pickup truck off a bridge. The bridge is located in Ascension Parish on Laurel Ridge Road, a dead-end road that intersects La. 935. The bridge was constructed over a drainage canal by the Ascension Parish Police Jury and is maintained by the police jury. In 1972 the police jury had the road asphalted, which prior to that time was just gravel and dirt, and reconstructed a portion of the bridge. The jury did not have railings placed on the bridge. Charles Michel's widow, Betty Sue Sherril Michel, brought suit on behalf of the estate of Charles Michel, herself and the minor children of the marriage against the police jury and the State of Louisiana, through the Department of Transportation and Development.
The trial court found that the state was not liable because Laurel Ridge Road is not part of the state highway system. However, the court found that the absence of railings on the bridge constituted a defect which presented an unreasonable risk of harm to motorists crossing it and that the police jury was strictly liable under La.C.C. art. 2317. Judgment was awarded in favor of the plaintiff and the children totaling $128,495. The issue on appeal is the correctness of that judgment.
The trial court found that the absence of railings on the bridge constituted a defect which presented an unreasonable risk of harm to motorists crossing it, and that the police jury is strictly liable under La.C.C. art. 2317.
The police jury alleges that the bridge on Laurel Ridge Road is not defective within the meaning of La.C.C. art. 2317 because of a lack of railings, and, applying negligence principles, recovery is barred because of decedent's contributory negligence.

LEGAL BASIS OF LIABILITY
We find that the defendant could be held strictly liable under La.C.C. art. 2317 or liable for negligence under La.C.C. art. 2315. The duty of the police jury in maintaining a highway in its control is the same as the duty of the state in maintaining a highway in the state highway system. The duty is to keep the highways in a reasonably safe condition. Whether the police jury has breached this duty, that is, whether the roadway and bridge at the scene of the accident were in an unreasonably dangerous condition, will depend on the particular facts and circumstances of each case. Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La. 1986).
Although the police jury is not an insurer of the safety of motorists using highways within its control, it cannot knowingly allow a condition to exist which is hazardous to a reasonably prudent motorist. Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir.1976), writ denied, 341 So.2d 1134 (La.1977). Liability based on negligence is imposed when the police jury is actually or constructively aware of a hazardous condition or defect and fails to take corrective action within a reasonable time. Efferson v. State, Through Department of Transportation & Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). Liability based on La.C.C. art. 2317 requires only that a hazardous condition or defect exist regardless of knowledge. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982). Since the police jury constructed the bridge without railings, the liability analysis is the same under La.C.C. art. 2315 or La.C.C. art. 2317.

*1371 FACTUAL BASIS OF LIABILITY
Laurel Ridge Road intersects with La. 935 in Ascension Parish. The road is approximately a mile and a half in length and serves as the sole form of ingress and egress to the families that live there (approximately 12 to 15), some farmers that maintain farms in the area, and a radio tower located there. Although the area is remote, the road has considerable traffic. Like many rural roads, it is a narrow highway with small graveled shoulders. At the time of the accident, the bridge was a wooden frame construction with a layer of asphalt, fifty feet long, twenty-two feet wide, with no railings on the side. The canal that the bridge crosses is approximately thirty-five feet wide.
The date of construction of the bridge or the canal was not established, but in 1971 or 1972 the police jury had Laurel Ridge Road paved and reconstructed and widened the bridge.
Vegetation grows heavy along the edge of the road and canal and somewhat on the edge of the bridge. Due to the vegetation and the fact that the bridge lies in a slight curve, it is almost impossible to ascertain the location of the canal or the bridge. Residents of Laurel Ridge testified of the difficulty in locating the bridge, especially at night or during poor weather conditions.
Photographs taken during optimum conditions, introduced into evidence, establish that it is almost impossible to locate the bridge due to the foilage and the layout of the road. Testimony established that, prior to the accident, the police jury received complaints and requests for railings. The cost of the railings on this bridge was estimated at $1500-$2000. The cost of the railings is minimal compared to the cost involved in the reconstruction of Laurel Ridge Road in 1972.
Railings make a bridge much easier to locate and traverse, in addition to providing a safety barrier for an inadvertent motorist, much like a shoulder to a highway. Cf. LeBlanc v. State, 419 So.2d 853 (La.1982).
All of the testimony established that the decedent's vehicle would not have gone off the bridge had railings been present. We find that the absence of railings on this particular bridge created an unreasonable risk of harm to motorists that the police jury had a duty to protect against.
We do not hold that the absence of railings from any bridge would render it defective or an unreasonable risk per se, nor do we preclude the possibility that other forms of warning might have relieved the police jury of liability for this particular bridge. Our decision is based solely on the peculiar facts of this particular case.

CONTRIBUTORY NEGLIGENCE OR VICTIM FAULT
Since all of the elements of strict liability and negligence have been proven by the plaintiff, the police jury can escape liability only by showing that the harm was caused by the fault of the victim, by fault of a third person, or by a fortuitous event. Loescher v. Parr, 324 So.2d 441 (La.1975).
The defendant alleges contributory negligence on the part of the decedent.[1] Contributory negligence must be proven by a preponderance of the evidence, it is never assumed. The burden of proving contributory negligence is on the party alleging it. Wooten v. Louisiana Power & Light Co., 477 So.2d 1142 (La.App. 1st Cir.1985).
There were no witnesses to the accident. A neighbor testified that he crossed the bridge approximately fifteen minutes prior to the accident and some children were fishing from the edge of the bridge with their bicycles parked on the bridge in decedent's lane. He testified that he slowed the church bus and spoke to one of the children. On his return trip a few minutes later, he noticed the truck in the canal. The decedent was seen just prior to the accident and appeared normal. Both plaintiff's and defendants' experts testified that the decedent was traveling at a slow rate of speed when the left wheel of the *1372 truck left the bridge. The speed was estimated to be no greater than ten to fifteen miles per hour, and at the point of leaving the bridge the vehicle had lost all of its forward momentum. The evidence corroborates this in that the truck was parallel to the bridge, only four to five feet from the bridge, and had simply flipped over in the water, causing decedent to drown. With the exception of the fact that the decedent's truck ran off of the left side of the bridge, there is an absence of evidence showing negligence on the part of the decedent. However, there were no discernible lines delineating lanes on the bridge, and the roadway and bridge itself are so narrow that persons using the bridge normally would not pass an approaching car on it. This indicates that vehicles normally used the entire roadway when crossing the bridge.
The trial court found that the plaintiff was not negligent. We will not alter the trial court's findings of fact absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no such error.

AMOUNT OF DAMAGES
The defendant alleges that the awards given the plaintiff were excessive. The plaintiff answers and requests an increase in damages.
The trial court recognized the decedent's earning potential and took cognizance of his spotty employment record, that the decedent and plaintiff had been living separate and apart for three months, and that decedent had provided plaintiff with no support whatsoever in this time period. As found by the trial court:
[The] Michels admittedly lived a turbulent marital life, which included acts of violence and threats. The separation mentioned above was the third between the parties, and a suit for separation was pending at the time of the accident. It is a fact that Mr. Michel had visited with Mrs. Michel on the day before his death and she testified that she intended to return to live with him; however, the Court cannot ignore the other factors to which reference has been made above.
When damages are insusceptible of precise measurement, much discretion is left to the court for the reasonable assessment of those damages. La.C.C. art. 1999. Where a legal right to recover exists, but the damages cannot be exactly estimated, the trial court has reasonable discretion to assess damages based on the facts and circumstances of the case. Before a reviewing court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion. Harrigan v. Freeman, 498 So. 2d 58 (La.App. 1st Cir.1986).
The trial court awarded $10,000 for loss of support and $5,000 for loss of affection and mental anxiety to Mrs. Michel. After reviewing the record we find that this award falls within the minimum range to be awarded for this type action. Consequently, we will not disturb the the award.
The trial court awarded $20,000 per child for each of the minor children, Christopher, Hershell, Stacey and Charles Michel, Jr. for the loss of affection of their father and their pain and suffering as a result of his death. The evidence showed a normal parent-child relationship between the decedent and each of the children. The court also awarded loss of support to the children as follows:

Christopher Michel 5,000
Hershell Michel 6,900
Stacey Michel 7,500
Charles Michel, Jr. 10,000

We find that these awards fall within the minimum range allowable. Consequently, we will not disturb the award.
The trial court also awarded damages for the funeral and wrecker expenses in removing the truck in the amounts of $1325 and $85, respectively. These expenses were not questioned by the defendant. We find no error in the award of these damages by the trial court.
The judgment of the trial court is affirmed in its entirety. The costs of this appeal are assessed against the appellant.
AFFIRMED.
LANIER, J., dissents and assigns reasons.
*1373 LANIER, Judge, dissenting.
The trial court's ruling that Mr. Michel was not contributorily negligent is clearly wrong.
The Laurel Ridge Road is a two-lane blacktopped road which is 17 to 18 feet wide. The bridge on which the accident occurred is 22 feet wide. According to the testimony of Duaine T. Evans, the expert traffic engineer for the plaintiffs, the bridge is not considered a narrow bridge because it is wider (by 4 to 5 feet) than the roadway on both sides of it. Olin K. Dart, Jr., another expert for the plaintiffs, agreed with this. Mr. Michel lived on the Laurel Ridge Road for several years and traveled the road and passed over the bridge on a daily basis. Clay J. Jarreau, Jr., the project representative for Barnard and Thomas Engineers in Ascension Parish, testified there were many wood trestle bridges like that in this case all over Ascension Parish.
Mr. Michel did not go off of the bridge on the side of the bridge where his lane of travel was located; he went off of the bridge on the side of the bridge where the oncoming lane of traffic was located. In other words, Mr. Michel's truck crossed the center of the roadway and/or the bridge, crossed the oncoming lane of travel and fell off of the bridge. This is not an inadvertent leaving of a designated lane of travel; this is a complete traversing of the opposite lane of travel (which was 11 feet wide). While it is true that the roadway and the bridge did not have a marked centerline, nevertheless, the roadway and the bridge[1] did have a center. The two lanes of travel were the halves of the roadway on either side of this center.
In the factual posture of the instant case, contributory negligence is equivalent to victim fault. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983). La.R.S. 32:71(A) provides as follows:

Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
(2) When the right half of a roadway is closed to traffic while under construction or repair;
(3) Upon a roadway designated and signposted for one-way traffic.
(Emphasis added.)
Violation of La.R.S. 32:71[2] is a criminal offense punishable by a fine and/or imprisonment. La.R.S. 32:57; State v. Eppinette, 494 So.2d 1348 (La.App. 2nd Cir. 1986). Violation of La.R.S. 32:71 also constitutes actionable negligence (or contributory negligence) as a breach of a civil tort duty. In Parnell v. Connecticut Fire Insurance Company, 245 La. 16, 156 So.2d 462, 464 (1963), appears the following:
Prosser on Torts, Sec. 34 (2d ed. 1955) we think is pertinent here. There it is said:
"The accepted rule now is that a breach of statute by the plaintiff is to stand on the same footing as a violation by the defendant. A few courts have held that the plaintiff's breach does not constitute contributory negligence as a matter of law, upon the ground that the statutes were enacted for the protection of others, and not of the actor himself. But it seems clear that safety statutes, such as speed laws and traffic rules, usually are designed for the broad purpose of preventing accidents or dangerous situations, in which plaintiff is quite as likely to be injured as the defendant; and it is not difficult to discover a policy to protect him by a standard of his own conduct, the unexcused violation of which is negligence in itself. * * *"
The traffic laws heretofore mentioned are designed to protect the occupants of vehicles against the very type of accident that occurred here. The plaintiff's violation of the ordinance and *1374 statute was negligence in this case for by driving in the wrong direction he forsook the protection the statutes were designed to afford him, and in so doing he endangered himself. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Plaintiff's negligent conduct continued to the moment of the accident and it was therefore a proximate cause and a cause in fact of the injuries he incurred. In short it was contributory for the accident would not have happened but for his violation of the traffic statutes.
(Emphasis added.)
The jurisprudence developed the rule that, when a driver on his wrong side of the road collides with another car which is in its correct lane of traffic, the driver is required to exculpate himself of any fault, however slight, contributing to the accident. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973).[3] The reason for this rule is set forth in Simon, 282 So.2d at 133, as follows:
The rationale underlying this legal principle imposing this heavy duty upon the trespassing motorist is perhaps most clearly explained in Rizley v. Cutrer, [232 La. 655, 95 So.2d 139 (1957)], cited above. There, Mr. (later Chief) Justice McCaleb stated, 95 So.2d 142:
The trespassing motorist "having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof."
This rule also applies where a motorist drives into the wrong lane of travel and strikes a pedestrian. Cf. Holguin v. State Farm Mutual Automobile Insurance Company, 253 So.2d 228 (La.App. 2nd Cir.), writ refused, 260 La. 17, 254 So.2d 619 (1971).
The instant case is factually similar to Hano v. Louisiana Department of Transportation and Development, 519 So.2d 796 (La.App. 1st Cir.1987). In Hano, a motorist approached a bridge over a creek, crossed the center of the roadway, crossed the oncoming lane of travel, left the roadway on the wrong side, struck a concrete culvert, and flipped his vehicle into the creek and died. After discussing the Simon rule, this court in Hano, 519 So.2d at 798-799, observed as follows:
This standard of care and presumption of negligence should also be applicable to a driver in the wrong lane of travel who strikes an object on the opposite side of the road. Once it is established that a driver was on the wrong side of the road and that he collided with an object on the wrong side of the road, he should likewise be required to exculpate himself from any fault, however slight, contributing to the accident.
In the case sub judice, the evidence incontrovertibly established that the Hano vehicle left its lane of travel, *1375 crossed the center line and opposite lane of travel, and rolled off the wrong side of the road before striking the concrete culvert traversing Colyell Creek. The evidence also established that no defect in the roadway or in the traffic signs along the roadway caused the Hano vehicle to leave its lane of travel. Having established these facts and, therefore, the presumption of Hano's negligence, it was incumbent upon plaintiffs to exculpate Hano from any fault contributing to the accident.
This plaintiffs did not do. There is absolutely no evidence in the record to indicate why the Hano vehicle was on the wrong side of the road and drove off the wrong side of the road before hitting the headwall over Colyell Creek. Although plaintiffs raised numerous possible explanations for the Hano vehicle's presence on the wrong side of the road, each were based merely upon plaintiffs' speculation. The evidence established that the most logical explanation for Hano's presence on the wrong side of the road was that he fell asleep or lost consciousness for some reason.
Based upon the evidence presented, we find that plaintiffs failed to carry the burden of proving that the accident did not occur because of Hano's negligence. Accordingly, we find that the trial judge erred in failing to find that Hano was contributorily negligent.
Having determined that Hano was contributorily negligent in causing the accident, thereby barring plaintiffs' recovery, we find it unnecessary to address the remaining issues.
There is no evidence in the record to show that Mr. Michel was passing another vehicle when he ran off the bridge; there is no evidence in the record to show that the bridge was under construction or that the bridge was designated as a one-way bridge. Thus, Mr. Michel was in violation of La.R.S. 32:71(A) when he drove in the oncoming lane of travel on the bridge and drove off of the bridge. Further, Mr. Michel crossed this bridge on a daily basis and had to be familiar with the approaches to the bridge and the physical characteristics of the bridge itself. Driving too close to the edge of a bridge that has no railing is also negligence. This "negligent conduct continued to the moment of the accident and it was therefore a proximate cause and a cause in fact of the injuries he incurred." Parnell, 156 So.2d at 464. Certainly, if Mr. Michel had injured a guest passenger in his vehicle, or had injured a person in a boat in the canal under the bridge, when he drove off of the bridge, the guest passenger and the person in the boat would have actionable negligence claims against Mr. Michel (and his insurer if he had one). Mr. Michel's conduct should be analyzed the same, whether he is a party plaintiff or a party defendant. There is no evidence in the record to satisfactorily explain why Mr. Michel drove off of the bridge on the wrong side. In this factual posture, Mr. Michel was clearly contributorily negligent. The holdings of the trial court and the majority opinion to the contrary are wrong.[4]
For the foregoing reasons, I respectfully dissent.[5]
NOTES
[1] Since this is a pre-comparative case, contributory negligence would completely bar recovery.
[1] The bridge and/or roadway are part of the highway. La.R.S. 48:1(11) and (20).
[2] Prior to Act 310 of 1962, this statute was La.R.S. 32:231.
[3] See also Robinson v. Estate of Haynes, 509 So.2d 128 (La.App. 1st Cir.1987); Nicholson v. Louisiana Department of Transportation & Development, 449 So.2d 178 (La.App. 3rd Cir. 1984); Devall v. Morgan, 424 So.2d 522 (La.App. 5th Cir.1982), writ denied, 427 So.2d 1214 (La. 1983).
[4] This case is distinguishable from Otto v. State Farm Mutual Automobile Insurance Company, 455 So.2d 1175 (La.1984), because, in Otto, among other things, there was evidence that Mrs. Otto was struck from the rear in her proper lane of travel and this collision pushed her into the wrong lane where the accident occurred.
[5] In view of the holding in Lognion v. Calcasieu Parish Police Jury, 503 So.2d 1092 (La.App. 3rd Cir.), writ denied, 507 So.2d 227 (La.1987), the appellant's defense, under the rationale of Myers v. State Farm Mutual Automobile Insurance Company, 493 So.2d 1170 (La.1986), may have some merit. However, because I find the contributory negligence issue so clear and dispositive, it is unnecessary to address it in this dissent.